MCPHERSON *v.* BRISTOL.

1. JUDGMENTS—JOINT DEFENDANTS.

Where, after a judgment against joint defendants, one defendant severs for the purpose of prosecuting a writ of error, and, upon a second trial, judgment again passes for the plaintiff, with no discontinuance as to the nonappealing defendant, the new judgment must be entered against both.

2. SAME—AMENDMENT—APPEAL.

Where judgment should have been entered against two joint defendants, but was, without objection below, entered against one only, the appellate court will treat it as having been entered against both, the trial court having authority to amend the judgment.

3. PARTNERSHIP—PURCHASE FOR NONTRADING FIRM—LIABILITY OF PARTNERS.

Express authority need not be shown in order to hold a member of a nontrading firm for the price of a horse purchased by his copartner, and necessary to the proper conduct of the firm business.

4. SAME — THEORY OF DEFENSE — RECOUPMENT — REQUESTS TO CHARGE.

Where a partner, sued on a debt contracted by his copartner, defends on the theory of nonliability, and fails to demand recoupment of damages, he cannot complain of a refusal to charge that proof that the property was of little value was competent as tending to show the seller's bad faith.

Error to Livingston; Smith, J. Submitted October 6, 1899. Decided December 21, 1899.

*Assumpsit* by William McPherson, Jr., and Alexander McPherson against John Bristol, impleaded with J. S. Day, upon a promissory note. From a judgment for plaintiffs, defendant brings error. Affirmed.

*William P. Van Winkle* and *W. E. Scott* (*Rollin H. Person,* of counsel), for appellant.

*Louis E. Howlett* and *Judd Yelland,* for appellees.

Long, J.   This is an action of *assumpsit*, the declaration containing all the common counts, with a copy of note attached.   Defendants appeared separately, and filed separate pleas.   Defendant Bristol, with his plea, filed an affidavit denying the execution of the note.   Demand for bill of particulars was made, and, among other items set forth in the bill served, were:

"One promissory note, dated June 24, 1896, given by J. S. Day and John Bristol to C. L. Cook, or bearer, for $200.
"Money loaned by C. L. Cook to J. S. Day and John Bristol, which account has been assigned to the plaintiffs."

The jury upon the first trial returned a verdict against both defendants, and judgment was entered thereon for the amount of the note and interest.   Defendant Bristol alone appealed to this court, and the judgment was here reversed.   115 Mich. 258.   The case has again been tried in the circuit, and a judgment given for plaintiffs; not, however, for the amount of the note, but for the purchase price of the horse which the note represented.

The facts are sufficiently set out in the former opinion, and only such further facts will be stated as are necessary to an understanding of the points now here involved.   It was stated in the former opinion that the questions presented were:

"1. Was there a partnership in fact?
"2. If there was no partnership in fact, was there such a holding out to the world as to justify those dealing with the members in believing that such a partnership existed?
"3. If there was a partnership in fact, was it a trading or nontrading partnership?
"4. If there was such a holding out, was it a holding out of the firm which justified strangers in believing that authority existed to execute the note in question?"

This court then said:

"In nontrading firms one partner does not generally possess the power to bind the partnership by way of contracting debts and executing commercial paper.   *   *   *
The power to make commercial paper by a member of a

nontrading firm exists only when it is expressly conferred, or when the giving of the paper is necessary to carry into effect an original purpose for which the partnership was formed."

At the close of the testimony on the present trial, the plaintiffs asked the court to submit the following special questions to the jury, and they answered the same:

"1. Was there a partnership agreement of any kind existing during the years 1895 and 1896 between Mr. Day and Mr. Bristol?

"*A.* Yes.

"2. If there was a partnership agreement existing between these parties, did that agreement contemplate that these parties should raise fruit for the market, buy and sell fruit for a profit, or to prepare produce for sale or market at a profit?

"*A.* No.

"3. Did Mr. Bristol conduct himself, or knowingly permit Mr. Day to so conduct himself, prior to June 24, 1896, as to lead the people in general, and Mr. Cook in particular, to believe that a partnership agreement of a trading character existed between Mr. Day and Mr. Bristol?

"*A.* No.

"4. If there was a partnership agreement of some kind existing between Mr. Day and Mr. Bristol, was the horse purchased of Mr. Cook, on or about the time it was purchased, reasonably necessary to carry on the business of the firm?

"*A.* Yes."

Defendant submitted the following special questions, which were answered by the jury:

"1. Did John Bristol expressly authorize J. S. Day to execute the note in question?

"*A.* No.

"2. Did John Bristol expressly authorize J. S. Day to borrow $25 in money of C. L. Cook, and pledge the credit of said Bristol therefor?

"*A.* No.

"3. Did John Bristol expressly authorize J. S. Day to purchase the horse of C. L. Cook, and pledge the credit of said Bristol therefor?

"*A.* No.

"4. Was said $25 necessary to carry into effect an original purpose for which the partnership then existing between Mr. Day and Mr. Bristol was formed?

"*A.* No.

"5. Was the horse purchased by Day of Cook necessary on the 24th day of June, 1896, to carry into effect an original purpose for which the partnership then existing between Day and Bristol was formed?

"*A.* Yes."

The jury returned a general verdict in favor of the plaintiffs of $202.59, which it appears was the price agreed by Day to be paid for the horse, with interest at 6 per cent.

The circuit court explained to the jury the distinction between a trading and a nontrading firm, and directed them that, if this was found to be a trading firm, or held out as such, the plaintiffs should recover on the note. The court then said further:

"I charge you that each member of a nontrading partnership has the legal right to purchase articles which are necessary in the business, and by the said purchase to bind himself and the other member of the firm for the payment thereof.  *  *  *  It makes no difference in this case how many horses Mr. Bristol individually owned, or how many horses Mr. Day individually owned. If you find that the horse in question was reasonably necessary in carrying on the business of the firm, then Mr. Day had the legal right to purchase it, and fix the price therefor, and to bind defendant Bristol thereby.  *  *  *  If you find that the horse in question was reasonably necessary in carrying on the business of the firm, and that Mr. Day agreed to pay Mr. Cook $175 therefor, your verdict should be for the plaintiffs for that amount, and interest at 6 per cent. from June 24, 1896."

The verdict and judgment were entered against Bristol alone.

1. It is contended by counsel for defendant Bristol that it was error to enter judgment against Bristol alone. There can be no doubt but that judgment should have been entered against both defendants. It could not stand

against Bristol alone.   If he be liable at all, it is as a partner of Day.   This question does not seem, however, to have been raised in the court below.   The judgment on the first trial was against both.   Defendant Bristol severed for the purpose of bringing the case to this court.   The case has been again tried.   No discontinuance has been entered against Day.   It is conceded by counsel for defendant Bristol that the proceedings on the present trial were in fact against both defendants, and the judgment should have been so entered.   The judgment should be amended in the trial court, and will be treated here as having been entered against both.

2. The special findings of the jury are not so inconsistent as to justify a reversal of the case.   Defendant Bristol admits that he was in partnership with Day.   There is no doubt whatever as to certain business of that partnership. It was raising and selling fruit from a 40-acre farm.   Day was intrusted with the management of the business.   It is evident that the business could not be carried on without the use of horses.   There was evidence tending to show that the horse was necessary to the proper conduct of the business.   This question was properly left to the jury.   The fact that no express authority was given by Bristol to Day to purchase the horse was not fatal to the action.

3. Defendant Bristol gave notice, with his plea, that the horse was represented by Cook to be sound, and worth $175; that Cook knew this was untrue; that the horse was not sound; and that he would recoup damages against any claim proved by the plaintiffs.   At the conclusion of the testimony, defendant's counsel requested the court to instruct the jury that, if they should find that the horse was not worth $175, and that Cook knew that fact at the time of the sale, that would be evidence they might consider tending to establish Cook's bad faith, and tending to prove conspiracy between him and Day to defraud defendant Bristol.   Defendant introduced evidence tending to show that the horse was not worth to exceed $50.

Under this notice of recoupment he might have been re-imbursed the difference between the actual value and the purchase price, provided he had been able to establish fraud and conspiracy on the part of Day and Cook. Under the findings of the jury, the horse was properly bought, and became the property of the partnership. The law would not permit the defendant to retain the horse, and escape all liability by showing fraud and conspiracy in the sale. Defendant preferred no request for the recoupment of damages. The case evidently was not tried upon that theory, but upon the theory that there was no liability whatever. Under this state of facts, the request was properly refused.

The judgment must be affirmed.

The other Justices concurred.