SCHOOL DIST. NO. 11, DAKOTA COUNTY, NEB., v. CHAPMAN et al.

(Circuit Court of Appeals, Eighth Circuit. January 15, 1907.)

No. 2,173.

1. STATUTES—LEGALITY OF ENACTMENT—CONSTITUTIONAL REQUIREMENTS.

The provision of Const. Neb. art. 3, § 10, requiring the yeas and nays on the final passage of a bill by the Legislature to be entered on the journal of each house, as construed by the Supreme Court of the state, does not apply to a vote of concurrence by either house in an amendment adopted by the other, but only to the vote on the passage of the bill following its third reading in each house, which is treated as the vote on its final passage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 20.]

2. SAME—SILENCE OF LEGISLATIVE JOURNAL—PRESUMPTION.

Under the Nebraska decisions, an act of the Legislature is not invalidated because the journal of the house in which the bill originated is silent in respect to its concurrence in an amendment by the other house which appears in the act as enrolled and signed.

3. SAME—READINGS OF BILL—CONCURRENCE IN AMENDMENT.

The provision of Const. Neb. art. 3, § 11, requiring every bill to be read in each house on three different days, as construed by the Supreme Court of the state, does not make it necessary that there shall be three readings of a bill in the house in which it originated, and by which it has been duly passed, on its return for concurrence in an amendment adopted by the other house.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 16.]

4. SAME—TITLE OF ACT.

Where a legislative act as enrolled and authenticated bore the same title as the bill when introduced, and the journals contain no affirmative statement that the title was at any time changed or amended, the act is not invalidated by the fact that in the journal entries relating to the bill during its passage it is sometimes identified by an abbreviated title and its number.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 27.]

5. SAME—ERROR IN TITLE.

Act Neb. March 31, 1887 (Laws Neb. 1887, p. 597, c. 76), is entitled "An act to amend 'An act to provide for the issuing and payment of school district bonds' approved February 26. A. D. 1879, being subdivision 15 of chapter 79. Revised Statutes." The only preceding Revised Statutes were those of 1866, which being prior to the passage of the original act did not contain the same, but it constituted subdivision 15 of chapter 79 of the Compiled Statutes of 1881, and such Compiled Statutes were named in the body of the amendatory act. Held, that the obvious error in the title did not produce any uncertainty as to the subject of the amendatory act such as to render it invalid as in violation of the constitutional mandate that the subject of a bill shall be clearly expressed in its title.

6. SAME—AMENDATORY ACT—CONSTITUTIONAL REQUIREMENTS.

The provision of Const. Neb. art. 3, § 11, that "no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed," does not require that the purpose to repeal the original sections shall be expressed in the title of the amendatory act, nor is an amendatory act void, where it correctly recites the sections amended, because in the repealing clause there is an obvious error in giving the number of the chapter containing such sections.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 207.]

7. SAME.

Under the rule of decision in Nebraska, an amendment of a prior law, coupled with a formal repeal of such law, does not operate as a repeal of the original act in a constitutional sense, but continues it in effect in its amended form, and a subsequent amendatory act is not void because it refers to and purports to amend the original and not the amended act.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 202, 203.]

8. TRIAL—WAIVER OF JURY—DISCRETION AS TO FINDINGS.

Where an action at law in a federal court is tried to the court without a jury, by stipulation pursuant to Rev. St. § 649 [U. S. Comp. St. 1901, p. 525], which provides that in such case the finding may be either general or special, whether such finding shall be general or special rests in the discretion of the court, and its refusal to make special findings is not subject to review.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 920–926.]

9. SAME—DIRECTION OF VERDICT—REFUSAL—WAIVER OF EXCEPTION.

The denial of a request for a finding in favor of a defendant, in the nature of a directed verdict, made at the close of plaintiff's evidence, and an exception to such denial, are waived by the subsequent introduction by defendant of evidence in its own behalf.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 983.]

10. PLEADING—ISSUES—ADMISSIONS QUALIFYING GENERAL DENIAL.

Under the rule of practice in Nebraska, which governs in actions at law in a federal court in that state, a general denial in an answer is treated as qualified by admissions made in other defenses; and where, in an action on school district bonds, the answer contained a general denial, but also an admission of the execution and genuineness of the bonds, and pleaded their invalidity, the admission governs, and the plaintiff was not required to prove their execution and genuineness.

11. SCHOOLS AND SCHOOL DISTRICT—BONDS—INNOCENT PURCHASER.

Where bonds of a school district in Nebraska payable to bearer contained recitals that they were issued for a certain purpose "and in pursuance of" a certain statute, which authorized their issuance for such purpose, and also bore a certificate of the state Auditor of Public Accounts that they were duly registered, and another by that officer and the Secretary of State showing that they were issued pursuant to law, as required by the statute, evidence that such bonds were purchased before their maturity in New York in the regular course of business by a dealer in such securities at practically their face value, and in reliance on such recitals and certificates, is sufficient to sustain a finding that he was an innocent purchaser for value, and entitled to protection as such.

12. SAME—VALIDITY—NEBRASKA STATUTE.

Act Neb. Feb. 26, 1879 (Laws 1879, p. 170) as amended by Act March 31, 1887 (Laws 1887, p. 597, c. 76), which authorizes school districts to issue bonds "to purchase a site for, or erect a school house, or houses, or for furnishing the necessary furniture or apparatus for the same, or for all of these purposes," authorizes such issuance for either one or all of the purposes stated, and such bonds are not invalid because they recite that they were issued "for the purpose of building a schoolhouse" only.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Schools and School Districts, § 224.]

13. SAME—RIGHTS OF PURCHASER—NOTICE OF INVALIDITY.

Bonds of a Nebraska school district were sold by a banker in New York, and bore certificates of registration and regularity by designated officers of the state, as required by the statute under which they were issued. The purchaser was told by the banker that a suit had been brought to enjoin such registration and certification, but that it had been dismissed, and the banker produced the bonds bearing certificates by such officers of due registration and regularity. In fact the suit had not been dismissed, and it

subsequently resulted in the granting of a permanent injunction as prayed for. *Held*, that such facts sustained a finding that the purchaser was not chargeable with actual notice of the pendency of the suit.

**14. SAME—PENDENCY OF SUIT—CONSTRUCTIVE NOTICE.**

A purchaser of negotiable bonds issued by a school district, which are regular on their face and bear the certificates of state officers that they were issued pursuant to statutory authority, is not chargeable with constructive notice of a pending suit to contest the election at which the bonds were authorized, brought under a general statute of the state authorizing suits to contest the election of any person to office, or the adoption of any proposition submitted to a vote of the people, but containing no provision for superseding the result of any election as declared by the canvassers pending such a suit; nor is such a purchaser chargeable with constructive notice of a temporary injunction granted in such suit restraining the issuance of the bonds, they having been in fact issued in due form.

In Error to the Circuit Court of the United States for the District of Nebraska.

Elbert H. Hubbard, B. H. Dunham, and Eric A. Burgess, for plaintiff in error.

James M. Woolworth and W. D. McHugh, for defendants in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and POLLOCK, District Judge.

VAN DEVANTER, Circuit Judge. This writ of error challenges a judgment recovered by the defendants in error against the school district in an action at law upon certain coupons clipped from bonds issued by the school district in pursuance of a statute of the state of Nebraska, approved February 26, 1879 (Laws 1879, p. 170), and other acts amendatory thereof, including that of March 31, 1887 (Laws 1887, p. 597).

The chief contentions presented by the assignments of error are to the effect that the amendatory act of 1887 is invalid because certain of the requirements of article 3 of the Constitution of the state were not observed in its enactment. Three sections of this article are as follows:

"Sec. 8. Each house shall keep a journal of its proceedings, and publish them. * * * *"

"Sec. 10. The enacting clause of a law shall be 'Be it enacted by the Legislature of the state of Nebraska,' and no law shall be enacted except by bill. No bill shall be passed except by assent of a majority of all the members elected to each house of the Legislature. And the question upon final passage shall be taken immediately upon its last reading, and the yeas and nays shall be entered upon the journal.

"Sec. 11. Every bill and concurrent resolution shall be read at large on three different days in each house, and the bill and all amendments thereto shall be printed before the vote is taken upon its final passage. No bill shall contain more than one subject, and the same shall be clearly expressed in its title. And no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed. The presiding officer of each house shall sign, in the presence of the house over which he presides, while the same is in session and capable of transacting business, all bills and concurrent resolutions passed by the Legislature."

The legislative journals, as published by authority, disclose these facts respecting the bill for the act in question: It originated in the

House of Representatives, where it was passed by the constitutional majority, the vote being taken by yeas and nays which were entered upon the journal. In the Senate it was amended and passed in its amended form by the requisite majority; the vote being taken and entered as in the House. It was then returned to the House with the request that the amendment be concurred in, but whether this was done, and if so by what majority, and in what manner the vote was taken, are matters in respect of which the journal of the House is silent. As enrolled under the supervision of the joint committee on enrollment, as signed by the presiding officer of each house, and as presented to and approved by the Governor, the bill embodied the amendment.

It is insisted that the amendment could only have been concurred in by a vote of the house in which the yeas and nays were taken and entered upon the journal, and that the absence of such an entry renders the act void. Whether or not the insistence is well taken is to be determined by ascertaining what is the proper construction and application of the state Constitution, as settled by the decisions of the court of last resort of the state. South Ottawa v. Perkins, 94 U. S. 260, 24 L. Ed. 154; Post v. Supervisors, 105 U. S. 667, 26 L. Ed. 1204. Turning to the decisions of that court, we find that in Hull v. Miller, 4 Neb. 503, it was held that a provision in the state Constitution of 1866, substantially the same as that in section 10, supra, respecting the entry upon the journal of the yeas and nays on the passage of a bill, did not apply to a vote of concurrence by either house in an amendment of the other, but only to the vote taken upon the passage of a bill following its last or third reading in each house, which was treated as the vote on its final passage. And in State ex rel. v. Liedtke, 9 Neb. 490, 4 N. W. 75, which related to an act passed after the adoption of the present Constitution, the court, after observing that "the words 'final passage,' as applied to matters of legislation, were well known to the framers of the Constitution, and presumably to the people who adopted it," held that the requirement of section 11, supra, that "the bill and all amendments thereto shall be printed before the vote is taken upon its final passage," does not apply to an amendment proposed by a committee of conference after disagreeing votes in the two houses, but only to amendments proposed before the vote following the last or third reading in each house, which was again treated as the vote on final passage. These decisions show that, under the authoritative interpretation of the state Constitution, a concurrence by one house in an amendment of the other is not the final passage of a bill on which the yeas and nays are required to be taken and entered upon the journal.

It is next insisted that, though such concurrence be not the final passage of a bill within the meaning of section 10, supra, the entire silence of the journal respecting a concurrence by the House renders the act void. But the rule in Nebraska is otherwise, at least in respect of matters like this which are not specially required by the Constitution to be entered upon the journal. It was so held in Hull v. Miller, supra, where the court said of the requirement that every bill shall be read on three different days:

"But inasmuch as it is not required, as it is in respect of bills on their final passage, that each house shall enter upon its journal and preserve the evidence of its having obeyed this rule, it will be presumed that they did so, unless the contrary clearly appear."

In other cases, notably Webster v. Hastings, 59 Neb. 563, 568, 81 N. W. 510, and State v. Burlington & Missouri River R. R. Co., 60 Neb. 741, 746, 84 N. W. 254, the rule relating to the impeachment of a duly authenticated and enrolled act by reference to the legislative journals is stated in this way:

"The rule established by our former decisions is that the due authentication and enrollment of a statute affords only prima facie evidence of its passage, and that the legislative journals may be examined for the purpose of ascertaining whether the measure was enacted in the mode prescribed by the Constitution. If the entries found in the journals explicitly and unequivocally contradict the evidence furnished by the enrolled bill, the former will prevail. The journals, being the records of legislative proceedings kept in obedience to the command of the Constitution, are considered the best evidence of what affirmatively appears in them regarding the enactment of laws."

And in State v. Frank, 60 Neb. 327, 333, 83 N. W. 74, 75, it was said, after referring to prior decisions:

"What they decide is that the journals are unimpeachable evidence of what they contain; not that their silence convicts the Legislature of having violated the Constitution. Every presumption is in favor of the regularity of legislative proceedings; and it is rather to be inferred that the journals are imperfect records of what was done than that the Legislature failed to perform the more solemn and important duties enjoined upon it by the Constitution. In Ex parte Howard-Harrison Iron Co., 119 Ala. 484, 491, 24 South. 516, 519, 72 Am. St. Rep. 928, cited in State v. Abbott, 80 N. W. 499, 59 Neb. 106, it is said: 'Of course, the presumption is that the bill signed by the presiding officers of the two houses and approved by the Governor is the bill which the two houses concurred in passing, and the contrary must be made to affirmatively appear before a different conclusion can be justified or supported. So here it must be made to affirmatively appear that amendments of the house bill in question were adopted by the Senate, and were not concurred in by the House.' The enrolled bill has its own credentials, it bears about it legal evidence that it is a valid law, and this evidence is so cogent and convincing that it cannot be overthrown by the production of a legislative journal that does not speak, but is silent. Such seems to be the conclusion reached by a majority of the courts; and such, certainly, is the trend of modern authority. To hold otherwise would be to permit a mute witness to prevail over evidence which is not only positive, but of so satisfactory a character that all English and most American courts regard it as ultimate and indisputable."

The last case upon the subject is State ex rel. v. City of Wahoo, 62 Neb. 40, 86 N. W. 923, and it was there held that an act originating in the Senate was not invalidated, because the journal of that body was silent in respect of its concurrence in an amendment of the House which was embodied in the enrolled act.

The validity of the act is also questioned because the bill, after its amendment by the Senate, was not read at large on three different days in each house. But of this it is enough to observe that it is authoritatively settled by the decisions of the Supreme Court of the state that amendments made during the process of enactment do not take from a bill the status obtained by prior readings or make it necessary to begin the readings anew. Cleland v. Anderson, 66 Neb. 252, 262, 92 N. W. 306, 96 N. W. 212, 98 N. W. 1075; State v. Liedtke, 9 Neb. 490, 4 N. W. 63.

Another objection urged against the act is that it did not pass both houses and receive the approval of the Governor under the same title. The facts bearing upon the objection are these: When the bill was introduced, its title, as is alleged in the answer of the school district, was that of a bill for "An act to amend an act entitled 'An act to provide for the issuing and payment of school district bonds,' approved February 26, A. D. 1879, being subdivision 15 of chapter 79, Revised Statutes." And such is the title of the enrolled act as authenticated by the presiding officers of the two houses and as approved by the Governor. The journals contain no affirmative statement that the title was at any time changed or amended. Save in one unimportant instance, they identify the bill by the number given to it when it was introduced. In some instances they also give the full title as here set forth, but more frequently, as in the entries reciting its final passage, they designate it as "A bill for an act to amend an act to provide for the issuing and payment of district bonds." The objection rests upon the assumption that each form of identification must be accepted as conclusively establishing what the title was at that time. The assumption is not well founded. There is no constitutional or other requirement that the journal entries shall identify the bill to which they relate by a recitation of its title. State v. Burlington & Missouri River R. R. Co., 60 Neb. 741, 748, 84 N. W. 254; Nelson v. Haywood County, 91 Tenn. 596, 20 S. W. 1; Field v. Clark, 143 U. S. 649, 671, 12 Sup. Ct. 495, 36 L. Ed. 294. And a careful examination of all the entries relating to this bill discloses without any question that the shorter form of identification was employed as an abbreviated and convenient means of description, and not as a full or accurate statement of the title. To illustrate: Although the bill originally bore the full title here set forth, the entry of its introduction in the House employs the shorter description. The report of its engrossment in the House, preparatory to its being read a third time and put on final passage, gives the full original title, but the entry of such reading and passage employs the shorter description. So also the report of its engrossment in the Senate gives the full original title, but the next succeeding entries employ the shorter description. After its passage by both houses it was enrolled with its full original title and was so reported by the joint committee on enrollment, and yet the subsequent entries of its authentication by the presiding officers of the two houses employ the shorter description. And of the entries of its presentation to the Governor by the appropriate joint committee that in the Senate Journal gives the full original title while that in the House Journal employs the shorter description. Thus the journals themselves show that when the shorter description was employed it could not have been, and was not, intended as a full or accurate statement of what the title was at that time. And this conclusion is strengthened by the communication from the Governor's office, set forth in the House Journal, announcing his approval of the enrolled act, and designating it by the shorter description, although the act then bore the full original title. In these circumstances it cannot be reasonably said that the journal entries containing the shorter form of identifica-

tion purport to fully or accurately state the title or to do more than employ an abbreviated and convenient description of the bill. As has been shown, the evidence of due enactment, furnished by the authenticated and enrolled act, is overcome only when it is unequivocally contradicted by the journals. There is no such contradiction here, so the objection must be overruled. The cases cited to support it are distinguishable because the journal entries there under consideration purported to fully and accurately state the title as it was at the times to which they severally related and affirmatively and unequivocally disclosed that it had been changed without the assent of part of the lawmaking power.

The title of the act is "An act to amend an act entitled 'An act to provide for the issuing and payment of school district bonds,' approved February 26, A. D. 1879, being subdivision 15 of chapter 79, Revised Statutes" (Laws 1887, p. 597, c. 76). The only preceding Revised Statutes were those of 1866, and they did not provide for the issuing or payment of school district bonds. This, it is urged, renders the title uncertain, and violates the constitutional mandate that the subject of the act shall be clearly expressed in its title. It must be ruled otherwise. The title definitely and accurately gives the title and date of the original act intended to be amended. That act could not have been embraced in the Revised Statutes of 1866, because it had not then been enacted. It did, however, constitute subdivision 15 of chapter 79 of the Compiled Statutes of 1881. They, and not the Revised Statutes, are named in the body of the amendatory act. In these circumstances the obvious error in the title produces no uncertainty as to the subject of the act, and is immaterial. The case is unlike that of State v. Burlington & Missouri River R. R. Co., 60 Neb. 741, 84 N. W. 254, cited by counsel, because there the erroneous reference to the Revised Statutes was not accompanied by any adequate reference to the original act, but stood alone.

Conformably to one of the requirements of the Constitution before set forth, the act, as will be shown presently, formally repeals the original sections which it amends, and because the title does not express the purpose to do this it is said to be fatally defective. The contention is both narrow and unsound. As was held in Union Pacific R. R. Co. v. Sprague, 69 Neb. 48, 95 N. W. 46:

"An amendatory act cannot become effective without expressly repealing the amended statute, and repealing by implication all repugnant or inconsistent laws; hence an intention to repeal is always necessarily implied, and need not be expressed [in the title] in order to apprise the members of the Legislature and the public that the new law, if adopted, will take the place of the old one."

While the act amends sections 4 and 5 of subdivision 15 of chapter 79 of the Compiled Statutes of 1881, it purports to repeal the like sections of chapter 59; and because of this it is claimed that the Legislature did not respect the constitutional mandate that the sections amended shall be repealed. Chapter 59 contains no subdivision numbered 15, nor any section numbered 4 or 5, and is entirely foreign to the subject of the act as expressed in the title. So it is obvious that the reference to that chapter is an error. But the chapter which was

actually in contemplation is not left in doubt. When the act is considered in its entirety, and in the light of the presumed purpose of the Legislature to respect the constitutional mandate, as it must be, it is perfectly plain that it was intended to repeal the sections which were amended. They were correctly described in the title as being in chapter 79, and that description corrects and controls the obviously erroneous one in the repealing clause. Richards v. State, 65 Neb. 808, 812, 91 N. W. 878; 2 Sutherland, Stat. Con. (2d Ed.) § 410; Black on Interpretation of Laws, 80; Broom's Legal Maxims (7th Eng. Ed.) 470.

The sections which are amended had been amended and repealed, conformably to the Constitution, by the act of February 24, 1883 (Laws 1883, p. 301, c. 73). This, it is said, entirely eliminated them from the original statute, and made it indispensable that any subsequent amendatory act should deal with them as part of the act of 1883. The contention rests upon a misapprehension of the effect of such a combined amendment and repeal. The uniform rule of decision in Nebraska is that the original sections are not thereby completely abrogated or abolished, but thenceforth have operation and effect in their amended form as part of the statute in which they were originally enacted. State v. Babcock, 23 Neb. 128, 36 N. W. 348; State v. Kearney, 49 Neb. 325, 68 N. W. 533; State v. Wahoo, 62 Neb. 40, 86 N. W. 923; State v. Bemis, 45 Neb. 724, 64 N. W. 348. In the last case an amendatory act similar to the one now under consideration was sustained, and a contention like that now made was disposed of in this way:

"The fallacy of that argument lies in the assumption that the effect of the amendatory acts is in any proper sense a repeal of the original section. True, as provided by section 11, article 3, of the Constitution, 'No law shall be amended unless the new act contain the section or sections so amended, and the section or sections so amended shall be repealed,' but the term 'repeal' is therein evidently employed in the sense in which it was understood at the time the Constitution was adopted. It had before that time been definitely settled as a rule of construction that the simultaneous repeal and re-enactment of the same statute in terms or in substance is a mere affirmance of the original act, and not a repeal in the strict or constitutional sense of the term. * * * The act of 1891 (Laws 1891, p. 121, c. 7) did not abolish section 145 as originally enacted (Laws 1887, p. 187, c. 10), or as amended in 1889 (Laws 1889, p. 142, c. 13), but, on the contrary, re-enacted it in terms with the exceptions above noted. Nor is the fact that the act of 1891 refers to the section as it appears in the Compiled Statutes at all material, since it was the original act which was amended, the reference to the compilation being for convenience only."

As the objections urged against the validity of the legislation under which the bonds were issued have been found untenable, it becomes necessary to consider the other assignments of error.

The trial was to the court, without the intervention of a jury, pursuant to a stipulation in writing filed with the clerk, and the finding upon the issues of fact was general. A proposed special finding tendered by the defendant was not adopted, and this is in effect made the subject of several assignments of error. But the ruling is not subject to review. When the trial is to the court, without the intervention of a jury, whether the finding shall be general or special rests in the discretion of the court in like manner as it rests in its discre-

tion, when the trial is with a jury, to require that the verdict be general or special. The statute (Rev. St. U. S. § 649 [U. S. Comp. St. 1901, p. 525]) declares that the finding "may be either general or special," but it does not give to one of the litigants the right to determine which it shall be.

At the close of the plaintiffs' case in chief the defendant requested a finding in its favor in the nature of a directed verdict, assigning as reason therefor that there was no substantial evidence to sustain a finding for the plaintiffs. The request was denied, and complaint is made of this. But it need not be noticed further than to say that the defendant subsequently proceeded with the introduction of evidence in its own behalf, and thereby waived the request and the exception taken to its denial. Hughes County v. Livingston, 43 C. C. A. 541, 555, 104 Fed. 306; Barnard v. Randle, 49 C. C. A. 177, 110 Fed. 906; Burton v. United States, 73 C. C. A. 243, 142 Fed. 57.

At the conclusion of all the evidence the defendant made a like request which was also denied. That ruling was excepted to at the time, and is now properly presented for review, so it is necessary to consider whether or not there was any substantial evidence to sustain a finding for the plaintiffs. If there was, the ruling was right, otherwise it was an error of law.

There was no evidence of the execution and genuineness of the bonds and coupons. But whether or not that was fatal to the plaintiffs' case depends upon the correct construction of the defendant's answer. One of the defenses was substantially a general denial, but others admitted the execution and genuineness of the bonds and coupons, and sought to avoid liability upon the latter by reason of various matters which were alleged, such as that "at the time of the issuing of said bonds" the assessed valuation of the taxable property in the school district was not such as to permit the incurrence of such an indebtedness, that the bonds were "fraudulently issued" for an unlawful purpose and without any consideration to the school district, and that they were "delivered" in violation of a subsisting injunction restraining the officers of the district from so doing. The action being at law, the answer should be construed as it would be in the courts of the state. Rev. St. U. S. § 914 [U. S. Comp. St. 1901, p. 684]; Northern Pacific R. R. v. Paine, 119 U. S. 561, 7 Sup. Ct. 323, 30 L. Ed. 513. In those courts it is the uniform practice in respect of such a pleading to treat the denial as qualified by the admission. Thus, in School District v. Holmes, 16 Neb. 486, 20 N. W. 721, which was an action to recover upon a bond alleged to have been issued by the school district. the answer contained a general denial and also a plea of partial payment, and it was held that the former was inconsistent with and qualified by the latter. In Bierbower v. Polk, 17 Neb. 268, 278, 22 N. W. 698, which was an action for the conversion of a stock of merchandise, the answer contained a general denial and also a plea justifying the taking and sale of the stock, and of this the court said:

"We will not try to harmonize the general denial with the other allegations of the answer, but will only say that it must be quite difficult to deny a proposition and admit its truth in the same verified pleading. The denial must yield to the admission."

And in Dwelling House Ins. Co. v. Brewster, 43 Neb. 528, 61 N. W. 746, where the reply contained a general denial of what was alleged in the answer, and also set up certain matters in avoidance, it was held that the latter part of the reply qualified the denial and should be treated as an admission of what was sought to be avoided. See, also, Dinsmore v. Stimbert, 12 Neb. 433, 11 N. W. 872; State v. Hill, 47 Neb. 456, 497, 66 N. W. 541; Home Fire Ins. Co. v. Johansen, 59 Neb. 349, 80 N. W. 1047; First National Bank v. Grosshans, 61 Neb. 575, 579, 85 N. W. 542; Northern Pacific R. R. Co. v. Paine, supra. It follows that the answer, when correctly construed, did not put in issue, but admitted, the execution and genuineness of the bonds and coupons, and therefore that no evidence upon that subject was required.

It is said that there was no evidence of the ·plaintiffs' ownership of the coupons sued upon. The contrary, however, is plainly shown by the record. Both the bonds and the coupons were payable to bearer. Edward D. Shepard, the original purchaser of the bonds, to whose testimony further reference will be made, testified that he sold three of the bonds to William Bostwick, and retained the others; that the coupons sued upon consisted in part of coupons clipped from Bostwick's bonds and in part of coupons which were clipped from Shepard's bonds and then sold to Bostwick. And at the trial the coupons were in the possession of, and were produced in evidence by, the plaintiffs, who were Bostwick's administrators and were suing in that capacity.

Assuming, but without deciding, that the circumstances in which the bonds were issued were such that there could be no recovery thereon, or upon any of the coupons, save by an innocent purchaser, or by one who acquired them through such a purchaser, unnecessary discussion will be avoided by at once coming to the question whether or not there was evidence to sustain a finding that Edward D. Shepard was an innocent purchaser. The bonds contained a recital that they were issued "for the purpose of building a schoolhouse in said district, and in pursuance of" the act of February 26, 1879, and the amendments thereto, and also bore a certificate by the Auditor of Public Accounts that they were duly registered, and another by that officer and the Secretary of State showing that they were issued pursuant to law, as was required by said act. Shepard was a witness for the plaintiffs, and his testimony, which was uncontradicted, was in substance as follows: As an investor in municipal securities he purchased the bonds in New York City in the regular course of business, paying therefor 97 per cent. of their face value with accrued interest. (The check by which payment was made was produced in evidence.) None of the bonds, nor any of the coupons attached to them, was then due. He read one of the bonds, and relied upon the recital therein and the certificates thereon, and also upon the written opinion of a reputable attorney of wide experience in matters pertaining to municipal securities, to the effect that the issuance of the bonds had been regularly authorized, and that they were in due form and were legally binding upon the district. At the time of the purchase the banker through

whom it was made told him that a suit had been brought to prevent the registration of the bonds by the state officers, and that it had been dismissed, but he did not otherwise hear or know of their validity being questioned until three or four months thereafter. When due effect is given to the recital in the bonds, and to the certificates of the state officers indorsed thereon (see Hughes v. Livingston County, 43 C. C. A. 541, 104 Fed. 306; Platt v. Hitchcock County, 71 C. C. A. 649, 139 Fed. 929; Gamble v. Rural Independent School District [C. C. A.] 146 Fed. 113), it is quite plain that this testimony was suffcient to sustain a finding that Shepard was an innocent purchaser for value before maturity, unless there be merit in some of the contentions now to be considered.

The bonds contained the recital, "Total amount of bonds issued by said district $24,000," and it is said that this, together with the last assessment of the taxable property of the district, disclosed that the statutory limitation upon the amount of bonds which could be issued had been exceeded. The contention is disposed of by the ruling which sustains the validity of the amendatory act of 1887, whereby the limitation was increased from 5 to 10 per cent. of the assessed valuation. This issue of bonds amounted to $22,000 and with a prior issue of $2,000 made the total stated in the recital, which was within the increased limitation.

The first section of the statute declared that school districts could issue bonds "for the purpose of purchasing a site for, and erecting thereon, a schoolhouse or schoolhouses, and furnishing the same," and because these bonds recited that they were issued "for the purpose of building a schoolhouse," it is said that they disclosed that they were not issued for a lawful purpose. Differently stated, the contention is that the statute permitted the issuance of bonds for the threefold purpose of purchasing a site, erecting a schoolhouse thereon, and furnishing the same, but not for the single purpose of erecting a schoolhouse, though the district may have had a suitable site therefor and other means of furnishing the building when erected. The statute was not so unreasonable. Its purpose, as stated in section 3, was to enable a school district to issue bonds "to purchase a site for, or erect a schoolhouse, or houses, or for furnishing the necessary furniture and apparatus for the same. or for all of these purposes." Whether or not the statement in the bonds of the purpose for which they were issued sufficiently conformed to the statement in the proceedings leading to their issuance is not material to the present inquiry because there was evidence to sustain a finding that Shepard purchased without notice of the want of conformity, if there was such.

At the time of his purchase a suit was pending in one of the courts of the state in which the election at which the bonds were voted was being contested and in which a temporary injunction restraining their registration and issuance had been granted. The suit was subsequently prosecuted to a successful conclusion of the contest, and the injunction was made perpetual. That he purchased with actual notice of the pendency of this suit is said to be a necessary conclusion from the fact that the banker through whom he purchased told him at that time that a suit had been brought to prevent the registration of

152 F.—57

the bonds by the state officers. The claim is fallacious. It ignores a material part of what the banker said, that is, that the suit had been dismissed, which could have been reasonably regarded as confirmed by his possession of the bonds bearing certificates of their due registration and issuance signed by the designated state officers. Thus, a finding that Shepard purchased without actual notice of the pendency of the suit was at least an admissible one under the evidence. Clark v. Evans, 13 C. C. A. 433, 66 Fed. 263; Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857; Cromwell v. County of Sac, 96 U. S. 51, 58, 24 L. Ed. 681.

Finally, it is said that the statute, under which the election at which the bonds were voted was being contested, superseded the result of the election as declared by the canvassers, and suspended the power of the district officers to act thereon, during the period prescribed for beginning a contest, and during the pendency of any contest begun within that period; and, upon the assumption of the correctness of this contention, it is argued that Shepard, being chargeable with knowledge of the statute, could not become an innocent purchaser pending a contest begun within the prescribed period, as this one was. The contention has no support in the statute which gave authority for issuing the bonds, for there was no provision therein for contesting the election. Nor does it have any support in the general statute which provides for contesting "the election of any person to any public office, the location or relocation of a county seat or any proposition submitted to a vote of the people" (Comp. St. Neb. c. 26, § 64 et seq.), for there is nothing therein indicative of an intent to supersede the result of an election as declared by the canvassers, or to suspend action thereon, during the period prescribed for beginning a contest or during the pendency of a contest begun within that period. And that such is not the intent of this statute is manifest when it is considered that it puts the contest of an election on a proposition submitted to a vote of the people upon the same footing as the contest of an election of a person to a public office, for it is the accepted rule that, unless there be some provision therein to the contrary, a statute authorizing contests of the latter sort does not at all postpone or suspend the right of one, whose election is declared by the canvassers, to qualify and exercise the functions of the office. McCrary on Elections (3d Ed.) § 267. Doubtless it was in this view of the statute that the contestants sought, and the court granted, a temporary injunction restraining the registration and issuance of the bonds pending the contest. Counsel for the school district, while frankly confessing their inability to find any decision directly in point, place much reliance upon the opinion in Stewart v. Lansing, 15 Blatchf. 281, Fed. Cas. No. 13,432. That was an action upon coupons cut from bonds issued on behalf of the town in aid of the construction of a railroad. The statute giving authority for the issuance of such bonds made it a condition that it should satisfactorily appear to the county judge that their issuance was desired by a majority of the taxpayers, representing a majority of the taxable property of the town, and provided that, if it should so appear, he should appoint commissioners to issue them, and that his decision should have the same force and effect as other

judgments of courts of record in the state. Another statute authorized the review by the Supreme Court of the state upon writ of certiorari of all questions of law and fact determined by the county judge in such a proceeding. Upon a petition presented to him the county judge determined that the issuance of the bonds, from which the coupons in suit were cut, was desired by the requisite number of taxpayers, and appointed commissioners to issue them. The proceeding was then removed upon writ of certiorari to the Supreme Court of the state, where the judgment of the county judge was reversed. But before the reversal the commissioners, notwithstanding the pendency of the writ, issued the bonds, and thereafter the coupons in suit came to be held by the plaintiff. The Circuit Court held that he was chargeable with constructive notice of the proceedings upon the writ of certiorari, and therefore could not be an innocent purchaser, and in its opinion said:

"It is also true that, as these bonds are negotiable commercial securities, an ordinary lis pendens would not affect them in the hands of an innocent purchaser. Warren Co. v. Marcy, 97 U. S. 96, 24 L. Ed. 977. But this litigation upon the certiorari was different. It affected the judgment itself, which was the foundation of all authority to issue the bonds, and not the parties merely, and, until it should be ended, leaving the judgment in force, there could be no such authority. In this case it was ended by holding the judgment for naught altogether, so that there never was a time from the commencement of the proceedings upon certiorari, by service of the writ, to their termination, when there was authority, or color of authority, for issuing the bonds. They were issued under a general law of the state of New York providing for their issue only upon such a judgment, which was, by another general law, subject to review by such proceedings, and the proceedings were all upon the open and known public records of the courts of the state; and, probably, all persons dealing in them would be bound to know the general laws concerning them, and to look for the proceedings under the law by which only they could ever have any vitality, if they desired to know, the same as all persons are bound to know the general laws, and the necessity and effect of proceedings under them, relating to other subjects. But dealers in these bonds were not left to make good their presumed knowledge of the law by searching it out. The bonds themselves on their face referred to the law of their origin. This affected them directly with notice of all the requirements of that law. McClure v. Township of Oxford, 94 U. S. 429, 24 L. Ed. 129. By that they would be informed, or be bound to act as if informed, that the authority to issue the bonds would depend wholly upon a judgment with which the commissioners had nothing of the making to do, and concerning which they would have the same opportunities to learn, by examining the records, as any other persons. An examination of the records would have shown them that the proceedings had been removed and that there was no judgment in force remaining."

It may be that what was thus said gives color to the present contention; but, if so, it was effectually disapproved when later on the case came before the Supreme Court of the United States, for that court, although affirming the judgment, distinctly recognized that the pendency of the writ of certiorari did not preclude the plaintiff from becoming an innocent purchaser, and proceeded to inquire whether or not there was evidence that "he was in a commercial sense the bona fide holder of the coupons sued for." Stewart v. Lansing, 104 U. S. 505, 509, 26 L. Ed. 866. See, also, Lytle v. Lansing, 147 U. S. 59, 62, 13 Sup. Ct. 254, 37 L. Ed. 78. That court had before held that one who was in fact a bona fide purchaser of bonds issued in the like

circumstances was not affected with constructive notice of the pending proceeding to review the judgment of the county judge. Orleans v. Platt, 99 U. S. 676, 25 L. Ed. 404. These cases, however, did not announce a new rule, but merely gave effect to the prior decision in County of Warren v. Marcy, 97 U. S. 96, 24 L. Ed. 977, wherein the doctrine of constructive notice arising from a pending suit was pronounced inapplicable to negotiable securities, as is shown by the following extracts from the opinion:

"It is a general rule that all persons dealing with property are bound to take notice of a suit pending with regard to the title thereto, and will, on their peril, purchase the same from any of the parties to the suit. But this rule is not of universal application. It does not apply to negotiable securities purchased before maturity, nor to articles of ordinary commerce sold in the usual way. This exception was suggested by Chancellor Kent in one of the leading cases on the subject in this country, and has been confirmed by many subsequent decisions. * * * Its object is to protect the commercial community by removing all obstacles to the free circulation of negotiable paper. If, when regular on its face, it is to be subject to the possibility of a suit being pending between the original parties, its negotiability would be seriously affected, and a check would be put to innumerable commercial transactions. These considerations apply equally to securities created during, and to those created before the commencement of, the suit, and as well to controversies respecting their origin as those respecting their transfer. Both are within the same mischief and the same reason."

It sometimes happens, as in the present case, that such securities are issued or negotiated in violation of a subsisting injunction in a pending suit, but that can make no difference in the rights of one who is in fact a bona fide purchaser, for the obvious reason that constructive notice of the injunction cannot be charged against one who is in no way charged with notice of the suit. Lexington v. Butler, 14 Wall. 282, 20 L. Ed. 809; County of Warren v. Marcy, 97 U. S. 96, 109, 24 L. Ed. 977; County of Cass v. Gillett, 100 U. S. 585, 593, 25 L. Ed. 585; Tregea v. Modesto Irrigation District, 164 U. S. 179, 187, 17 Sup. Ct. 52, 41 L. Ed. 395.

The several matters presented in support of the claim that the defendant's request for a finding in its favor in the nature of a directed verdict should have been sustained have now been considered, and none of them has been found to be tenable.

Error is assigned upon some of the rulings in the admission and rejection of evidence, but special notice of such of them as would otherwise merit attention is rendered unnecessary by what has been said.

No error being disclosed by the record, the judgment is affirmed.