THE SHELL Co. (P.R.) LTD., Plaintiff and Appellant, *v.* RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 7778. Argued June 21, 1939.—Decided November 10, 1939.

*Jaime Sifre, Jr., Horacio Franceschi* and *Rafael Pastor,* for appellant. *B. Fernández García, Attorney General* and *R. García Cintrón, Assistant Attorney General,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The Shell Co. (P.R.) Ltd., a limited partnership organized under the laws of England and authorized to do business in Puerto Rico, and engaged in importing to the Island from foreign countries and selling therein petroleum and its derivatives such as gasoline, gas oil and Diesel oil, filed a complaint on July 13, 1934, against the Treasurer of Puerto Rico praying for a judgment declaring Act No. 15 of the First Special Session of the Thirteenth Legislature of 1933, (page 80), by virtue of which Sections 1 and 2 of Act No. 40 of 1931 were amended so as to impose a tax on gasoline, "void, ineffective and unconstitutional," and condemning the defendant, in consequence thereof, to return to plaintiff $46,912.66 which he collected under said law and which plaintiff paid under protest, plus interest and costs.

Once that the case had been finally submitted, together with other similar ones filed by the West India Oil Co. (P.R.) and

by The Texas Co. (P.R.) Inc., the district court entered judgments in the three cases dismissing the complaints, basing itself in a statement of facts and opinion, common to all, which copied literally, in its pertinent portion, reads as follows:

"Plaintiffs allege that the taxes in question are illegal because the act under which they were collected is unconstitutional.

"On or about August 10, 1933, House Project No. 28 was presented in the House of Representatives. Certain amendments were introduced to it in the House, passing afterwards to be considered by the Senate, where it was again the object of other amendments and where, after being approved on third reading, it was returned to the House, which body concurred in the amendments introduced in the Senate. Inadvertently, the bill was enrolled as originally approved by the House, that is, omitting in part the amendments introduced in the Senate, and with that omission it was signed by the Presidents of the two legislative bodies and was then sent to the Governor for his consideration.

"While the bill was in the hands of the Governor, the Legislative Assembly noticed the omission and in order to save it, it approved a Joint Resolution, No. 2 of the Thirteenth Legislature of Puerto Rico, First Special Session. In said Joint Resolution the Legislative Assembly states which was its intention in approving said bill and expresses the manner in which it should be understood as drafted, according to the amendments introduced in both legislative bodies and requests the Governor to consider the bill as if it had been drawn in the manner appearing from the aforementioned Joint Resolution.

"The Governor approved the bill in the manner expressed in the Joint Resolution, it becoming *ipso facto* Act No. 15 of August 24, 1933.

"After stating these facts in the three complaints, plaintiffs allege that Act No. 15 thus enrolled and approved is void as it violates the provisions of Section 34 of the Organic Act for the following reasons:

"I. Because the Bill (House Project No. 28) as enrolled or registered in the minutes book, signed by the Presidents of both Houses and sent to the Governor, was not the same bill which was approved by the Legislative Assembly because part of the amendments introduced in the Senate, to which we have referred, were omitted.

"II. Because the Bill (House Project No. 28) as actually approved by both Houses, was not registered in the minutes book nor signed or cert·fied to by the Presidents of the House of Representa-

tives and of the Senate, nor sent to the Governor for his consideration.

"III. Because the approval by the Governor of the Bill (House Project No. 28) was bestowed due to a bill which was not approved by the House of Representatives and the Senate of Puerto Rico.

"IV. Because said Bill contains more than one subject.

"V. Because it does not appear from the title of the Bill (House Project No. 28) as approved by the House of Representatives and the Senate, that any tax was imposed on gas oil or Diesel oil introduced, sold, used or consumed in Puerto Rico, for which reason said act is ineffective, null and void inasmuch as it refers to the taxes on said products which plaintiffs paid under protest, . . .

"VI. Because Joint Resolution No. 2 already mentioned is illegal and void for the following reasons:

"(a) Because Joint Resolutions do not have force of law and only bind the members of the Legislative Assembly.

"(b) Because upon adopting said Joint Resolution the Legislative Assembly had no jurisdiction over the Bill (House Project No. 28), as the former was adopted after the bill had been enrolled, certified to by the Presidents of the Legislative Houses and sent to the Governor for his consideration of the same.

"(c) Because the Legislative Assembly has not authority to grant or the Governor to accept the powers conferred upon him by the aforementioned Joint Resolution.

"(d) Because the Legislature of Puerto Rico lacks authority to amend an act through a Joint Resolution.

"(e) Because the amendment to the title of the Bill (House Project No. 28) was introduced after the latter had been approved by the Senate on third reading, and should said amendment be valid, the act would be void as it was approved under one title in the House and under another in the Senate.

"(f) Because said title contains a plurality of subject matters.

"VIII. That Act No. 15 of 1933, as amending Act No. 40 of 1931, is not germane to the latter nor are the titles of both germane to one another.

"Considering the circumstances under which Act No. 15 was approved as they actually occurred, and ignoring the legal effect charged by appellants, the questions raised in these three lawsuits are limited to two propositions, to wit:

1.—Can the Legislature, through a Joint Resolution, correct a clerical error committed in the enrollment of a bill, when the latter is in the possession of the Governor to be considered by him?

"2.—Does Act No. 15 or its title, contain a plurality of objects or purposes?

"1.—Plaintiffs contend that the Act signed by the Governor was not the one approved by the Legislative Assembly. It is evident that if this conclusion were sustained by the facts, the act would be completely void and more than void, inexistent. But the reality of the facts does not uphold that conclusion. The act finally signed by the Governor is the same which was approved by both Houses with their respective amendments. It was upon enrolling the bill and at the time of certifying and signing the same by the Presidents of the two Houses that inadvertently the amendments introduced to the title as well as to the final clause of the bill were omitted. If the Governor had signed the bill as it was originally submitted to him then he would have indeed signed a bill different from the one approved by the Legislative Assembly. Consequently, it was necessary to correct the error, and the difficulty lay in selecting the remedy. Following the precedent established upon approving the act which imposed a certain tax on slot machines, recourse was had to the Joint Resolution in order to express the manner in which the bill had been actually approved, requesting the Governor to consider it as it had actually been approved by the Legislative Assembly or what is the same, the bill was made to conform to the truth.

"The Supreme Court in the case of *Agudo* v. *Treasurer,* 49 P.R.R. 863, sanctioned this procedure and sustained the validity of an act approved under the same circumstances, this doctrine having been ratified in the case of *P. R. Distilling Co.* v. *Treasurer,* 52 P.R.R. 651. (Decided on the 11th of the current month).

"Plaintiffs allege that one of the amendments introduced in the Senate was not considered by the House when House Project No. 28 was returned to the same. To prove their contention they refer to the minutes of the House which are silent in regard to said amendment. This being so, and it not appearing affirmatively from the minutes that the House refused to consider such amendment, it must be presumed that the silence of the minutes is due to an omission when entering the amendments and it must be understood that the bill was approved as it is affirmatively stated by both Houses in the above cited Joint Resolution. *Connor* v. *Blackwood,* 2 S. W. (2d) 44; *Hollingsworth* v. *Thompson,* 40 A.S.R. 220; and *School District No. 11* v. *Chapman,* 152 Fed. 887.

"2.—Act No. 15 of August 24, 1933, ((2) page 80) amends Sections 1 and 2 of Act No. 40, approved on April 24, 1931 (page 360),

which imposes a tax of seven cents on each gallon of gasoline introduced, manufactured, sold or consumed in Puerto Rico. It adds to said Section an excise tax of four cents on each gallon of gas oil and Diesel oil and provides further that any mixture or composit'on containing gasoline will be comprised within the scope of the term 'gasoline', as it is used in said Act. Its following Sections create a fund with the produce of this excise tax, and determine the different public activities which will be provided for by the fund thus created.

"The title of the Act is very extensive and due to this we do not transcribe it, but in synthesis we may say that it comprises the matters mentioned in the preceding paragraph.

"In the case of *Ule* v. *State*, 101 A.L.R. 903, decided by the Supreme Court of Indiana on February 20, 1935, the subject of what constitutes a plurality of purposes in the body as well as in the title of the act is extensively studied. In said case a law is considered whose title states as follows:

" 'An Act providing for the registration and licensing of motor vehicles, motor bicycles, tractors, trailers and semi-trailers, for the regulation of the use and operation thereof on the public highways, defining chauffeurs and providing for the examination and licensing thereof, the suspens'on and revocation of licenses, and the transfer of ownership, requiring the keeping of certain records of motor vehicles, motor bicycles and motor trucks for which storage, supplies or repairs are furnished, providing that liens may be taken thereon, and prescribing penalties for the violation thereof.'

"The Constitution of that State contains a provision similar to the one contained in Section 34 of our Organic Act, which reads:

" 'Every act shall embrace but one subject and matters properly connected therewith.'

"The appellants in said case alleged that the Act which was impugned violated the constitutional precept above transcribed, because the title contained two different precepts: (*a*) the regulation of motor vehicles in public highways and (*b*) the granting of liens in certain cases.

"In considering the issue raised by the appellant, said court decided:

" 'It is hardly necessary to suggest that matters which ordinarily would not be thought to have any common features or characteristics might for purposes of legislative treatment be grouped together and treated as one subject . . .

" 'And if, from the standpoint of legislative treatment, there is any reasonable basis for the grouping together in one "act" of various matters,.this court cannot say that such matters constitute more than one subject.

" 'The subject of the act in question is "motor vehicles." The subject expressed in an act should be reasonably specific so as to indicate some particular branch of legislation as a head under which the particular prov'sions of the act might reasonably be looked for, and the generality of a title is not objectionable if it is not made to cover legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection . . .

" 'This constitutional provision should be given a liberal construction and not one that would embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purpose for which it was adopted. Cooley Const. Limitations (7th. Ed.) p. 209; *Moore-Mansfield Const. Co.* v. *Indianapolis, etc., R. Co.,* 179 Ind. 356, 101 N.E. 296, 300, 44 L.R.A. (N.S.) 816, Ann. Cas. 1915D, 917.'

" 'Another purpose of the constitutional provision, as said in the case of *Moore-Mansfield Const. Co.* v. *Indianapolis, etc., R. Co.,* supra, "was (1) To prevent 'log-rolling" legislation; (2) to prevent surprise or fraud in the Legislature by means of provisions in bills of which the titles give no intimation; and (3) to apprise the people of the subject of legislation under consideration.'

" 'None of these objections can be raised in the instant case. The title is broad and one may know by reading it what it means and includes. It cannot be said there is no rational unity between the matters embraced in the act. The several matters embraced relate to "motor vehicles" and we believe, from the standpoint of legislative treatment, there was a reasonable basis for the grouping together of the various matters in the act. We do not believe there is a duplicity in the title and body of the act.'

"This reasoning is equally applicable to Act No. 15 of 1933. Its principal object is to impose an excise tax on gasoline and on products which contain it and on gas oil and Diesel oil. Related to this object or main purpose are the form in which said excise tax shall be imposed and collected, the creation of a fund with the produce of the same and the different public activities to which the money thus obtained shall be devoted.

"Futhermore, if an act is presumed to be constitutional as long as the contrary is not judicially held; if in case of doubt in regard

to the constitutionality of an act, its validity should be upheld, is it not reasonable to apply these principles when there is doubt in regard to the existence of a plurality of purpose and to uphold as in the other cases, the validity of the act?

"Upon considering the second proposition which we have just commented upon, we were able to rely our decision in the case of *P. R. Distilling Co.* v. *Treasurer, supra,* where the Supreme Court sustained that there existed no plurality of purposes in the title or in the body of this Act; but when said opinion reached us, we had already studied the case and both parties had filed well prepared and extensive briefs in support of their respective contentions and we felt bound to show to the parties that their briefs had been considered and studied by the judge to whom they submitted their contention.

"Act No. 15 of 1933, as we believe to have shown, does not contain the defects which are assigned. It is valid, and the tax which plaintiffs paid under protest is equally valid. In consequence, it is proper in each one of the three cases which we are considering, to enter judgment dismissing the complaint with costs to the defendant."

The three plaintiff companies appealed to this Court from the judgments entered against them by the district court, but the West India Oil Co. (P.R.) as well as the Texas Co. (P.R.) Inc., discontinued their appeals, inasmuch as they reached an agreement with the defendant in regard to the waiver on his part of the costs of the proceedings, the payment of which was imposed upon plaintiffs, and this Supreme Court granted the motion for discontinuance by orders of April 5, 1938.

Only The Shell Co. (P.R.) Ltd., appealed, assigning in its brief the commission of eight errors which it considers at length, and which the Treasurer attacks at length also in his.

We have studied the records and the briefs and in our opinion the appeal taken does not lie. The Act concerned, considering all attendant circumstances, is constitutional. And as the reasons stated by the trial court in its opinion to uphold its judgment were correctly stated and in a convincing manner, it is not necessary that we state them again.

The appeal must be dismissed and the judgment appealed from affirmed.

Mr. Justice De Jesús took no part in the decision of this case.