## P. COURSEY RICHARDS V. STATE OF NEBRASKA.

FILED OCTOBER 9, 1902.   No. 12,733.

1. **Information:** THE WORD "FELONIOUSLY." The word "feloniously" can serve no practical purpose in an information charging all the essential elements of a felony.

2. ———: ———: REASON FOR RULE. It was thought in ancient times to be a wholesome rule to require the pleader to show by the use of the word "feloniously," as an appellative term, the grade of the offense charged, but the reason for the rule and the rule itself have ceased to exist.

3. **Immaterial Change in Title to Bill.** An immaterial change in the title to a bill, whenever made, is without legal effect.

4. **Original Code:** MEANING OF TERM. The words "original Code," when used in the title to a bill providing for the amendment and repeal of a section of the general law relating to crimes, should be construed as referring to the Code of 1873 and not to the abrogated Code of 1866.

5. **Reading of Bill:** IDENTITY OF TITLE. A defect or imperfection in the title of a legislative bill may be corrected by amendment at any time before the bill is put upon its passage. The constitution does not require that every bill shall be read at large on three different days in each house of the legislature under an exactly identical title.

6. **Criminal Code:** ACT OF 1887: SUBJECT: TITLE. The act of 1887 amending section 12 of the Criminal Code contained but one subject and that subject was clearly expressed in the title.

7. **Legislation:** TITLE: CRIMINAL CODE. The legislation embraced in the said act of 1887 was within the title to the act of 1873, providing for the establishment of a Criminal Code, and was germane to section 12 of the last-mentioned act.

8. **Reference to Wrong Section.** The purpose of the legislature, by the act of 1887, aforesaid, to amend and repeal section 12 of the Criminal Code, is not rendered doubtful by the reference to section 11 in the repealing clause.

9. **Amendment of Criminal Code.** The act of 1895 amending section 12 of the Criminal Code was constitutionally adopted, and is a valid law.

10. **Old Age:** DEVOTION TO COUNTRY: RAPE. Neither old age nor devotion to country in time of peril, can be regarded as a complete disproof and refutation of the charge of rape.

11. **Evidence:** VERDICT. Evidence examined, and *held* sufficient to sustain the verdict.

ERROR from the district court for Lancaster county Tried below before HOLMES, J.  *Affirmed.*

*R. D. Stearns, Lorenzo W. Billingsley, Robert J. Greene* and *Richard H. Hagelin,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,* for the state.

SULLIVAN, C. J.

On an information charging statutory rape, the defendant, P. Coursey Richards, was tried, found guilty and sentenced to imprisonment in the penitentiary for a period of twelve years.

One of the assignments of error upon which he relies for a reversal of the sentence is that the information is fatally defective because it fails to allege that the act in question was feloniously done. In our opinion the omission is not deadly. The facts pleaded show with clearness and legal precision the commission of a crime. They show that the defendant had sexual relations with his stepdaughter, he being at the time over, and she under, the age of 18 years. Nothing further was necessary to charge a violation of section 12 of the Criminal Code. The word "feloniously," if it had been introduced into the information, could serve no practical purpose. Its use would, it is true, have the sanction of custom, but not of utility or positive law. It might perhaps indicate that the act was criminal, and that in England, by the common law, a forfeiture of lands and chattels would follow conviction; but the criminality of an act does not depend upon the pleader's characterization of it, and the office of indictment or information is not to instruct either the defendant or the court in the history of English jurisprudence. It was thought in ancient times to be a wholesome rule to require the pleader to show by the use of the word "feloniously," as an appellative term, the grade of the offense charged in the indictment (1 Bishop, Criminal Procedure, 535), but that view is, we suppose, no

longer entertained by any one. The reason for the rule does not seem at this day to have been sound, or even plausible; but such as it was, it has ceased to exist, and in this state the rule itself has been swept away by section 412 of the Criminal Code, which declares that no indictment shall be deemed invalid "for want of the averment of any matter not necessary to be proved, nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." All the elements of the offense of which Richards was convicted having been alleged in the information, we are not able to see how he could have been prejudiced by the omission of the word "feloniously." As supporting our conclusion upon this point we refer to *Wagner v. State,* 43 Nebr., 1; *State v. Setter,* 57 Conn., 461, 466; *Mitchell v. State,* 42 Ohio St., 383, 386; 1 Bishop, Criminal Procedure, 535; Wharton, Criminal Pleading & Practice, 260.

Another ground upon which defendant claims a reversal of the sentence is that the acts of 1887 and 1895 amending section 12 of the Criminal Code were not adopted in accordance with constitutional procedure, and are therefore void. The contention of counsel for Richards is that the bill for the amendatory act of 1887 was not read in the house of representatives on three different days with the identical title that it bore at the time of its introduction. It appears from the house journal that the bill in question, Senate File No. 10, was first read on January 20 under the title "A bill for an act for the protection of girls under the age of fifteen years, and to amend section 12 of chapter 4 of the original Code, and repeal said original section." On the following day it was, according to the journal, again read under the title "A bill for an act for the protection of girls under the age of fifteen years, and to amend section 12 of chapter 4 of the Criminal Code of the Compiled Statutes of Nebraska, and to repeal said original section." This is the title which the bill bore during the whole of its subsequent history. The argument of defendant's counsel proceeds on the assumption (1) that the

change in the title was a substantial one, and (2) that every bill must be read at large on three different days in each branch of the. legislature under an exactly identical title. Both assumptions are unwarranted. The original Code referred to in the title to the bill as it was first read was the Code of 1873, and not the Code of 1866, which every one understood had been repealed. It is preposterous to suppose that the legislature was undertaking by the adoption of the bill known as Senate File No. 10 to amend and repeal a notoriously non-existing law. But if the house amended the title to Senate File No. 10, or if it adopted an unauthorized alteration of the title, it did so in the exercise of an undoubted right. It has never been held by this court, nor, we believe, by any other, that it is not competent for the legislature to correct defects or imperfections in the title of a bill at any time before the bill is put upon its passage. The constitution requires that the subject of a bill shall be expressed in its title, but no law has ever been annulled because it passed through some of the earlier stages of legislation under an imperfect title. The title is amendable as well as the body of the bill, and it is in accordance with accepted canons of legislative procedure to amend it at any time before final action is taken. *Binz v. Weber,* 81 Ill., 288; *Attorney General v. Rice,* 64 Mich., 385; *Milwaukee County v. Isenring,* 109 Wis., 9.

A further argument against the validity of the act of 1887 is that it contained more than one subject, was broader than its title, not germane to the title of the original act, and in some of its provisions extremely uncertain. These objections may be briefly disposed of. The original act was entitled "An act to establish a Criminal Code." Section 12 defined the crime of rape, and differed from the present law on that subject only with respect to the age limit. The act of 1873 was constitutionally adopted, and is, in its general scope and reach, a valid law. Whatever might have been originally made a part of that law may at any time be ingrafted upon it by legislation professing to be amendatory. *Webster v. City of Hastings,* 59 Nebr.,

563, and cases there cited. The act of 1887 was obviously within the title to the act of 1873 and it was, of course, germane to section 12 of the latter act. It might, therefore, have been constitutionally enacted under a title declaring that its object and purpose was to amend section 12 of the Criminal Code. The title chosen by the legislature is tautological, but it is otherwise faultless. In it the subject of legislation, though needlessly amplified by repetition, is clearly expressed. The alleged uncertainty in the act of 1887 is found in the repealing clause, which declares "that said original section 11 herein amended shall be, and the same is hereby, repealed." The intention of the legislature, which is to be ascertained from a view and consideration of the whole law, is, in our judgment, clear and certain. It is beyond question that the second section of the act was intended to repeal the law which it was the declared purpose of the first section to amend. In providing for the repeal of the amended section, in obedience to the mandate of the constitution, the legislature made a verbal error, which produces no ill effect because it does not tend in the slightest degree to render doubtful or obscure the legislative purpose and intent. You may reject the numeral term as a mere redundancy, and no shadow of ambiguity will remain. Having shown that the act of 1887 is valid, it will not be necessary to consider the argument which counsel have advanced on the assumption that the act of 1895 (Session Laws, 1895, ch. 74), was an attempt to amend a non-existing law.

The only question remaining for consideration is whether the jury were justified on the evidence in returning a verdict in favor of the state; and this question, after a very careful reading of the bill of exceptions, we answer in the affirmative without doubt or hesitation. The defendant, as his counsel insistently point out, is old, and has rendered some service to the nation, but these facts do not conclusively rebut the persuasive proofs of guilt brought forward at the trial; they are not necessarily characteristic of innocence and virtue. Age does not al-

ways chasten the soul, nor does devotion to country in time of peril insure obedience to her laws in times of peace. Although there is in this case no direct and positive proof of the *corpus delicti*, it is, we think, established by circumstantial evidence of the most cogent and convincing kind. The prosecutrix was, according to the evidence adduced by the state, debauched repeatedly by the defendant at his office in the city of Lincoln. He professed to be giving her medical treatment, and she, being a child only 12 years of age, believed his representations and submitted innocently to his embraces. In the course of time she became afflicted with a venereal disease, and the defendant was then taxed with the crime for which he has been tried and convicted. He at first stoutly asserted that he was innocent, but later on admitted that if he should be arrested and tried, he would be sent to the penitentiary. He declared that he wanted to get off the earth, and took a dose of laudanum with the intention of ending his existence. The poison, however, not proving effective, he at once sold out his business and fled in the night from the city. He traveled on foot under an assumed name, and when arrested in Missouri denied his identity. At his office were found venereal remedies and appliances for their use. At the trial he denied in general terms that he had ever had sexual relations with the prosecutrix, but he did not deny her detailed account of the strange and stealthy method employed in giving her medical treatment. A denial of guilt in broad terms without denial or explanation of the conduct imputed to him by the prosecutrix can, we think, be regarded as little better than a confession.

The verdict is supported by sufficient evidence and the judgment should be, and is,

AFFIRMED.

NOTE.—*Criminal Pleading.*—*Felonice.*—In the ancient indictment, *proditorie* indicated treason, and *felonice* felony; and where neither word appeared the offense was a misdemeanor. Starkie, Criminal Pleading [2d ed.], 74, 75. Mr. Bishop says that reason just as much requires it in the statutory as in the common-law crime.

Criminal Procedure, 535. And the following American cases hold the adverbial allegation "feloniously" necessary and its omission fatal. *Edwards v. State*, 25 Ark., 444, 445, *Mott v. State*, 29 Ark., 147, 148 [These two cases are in apparent conflict with an earlier decision of the same court. *State v. Eldridge*, 7 English, 608.]; *Sovine v. State*, 85 Ind., 576, 577 [This case held that the information might have been cured by amendment.]; *Wile v. State*, 60 Miss., 260— *held* fatal on motion to quash; the reason give🌑 was that the offense charged was a misdemeanor at common law, raised to a felony by statute, and the misdemeanor was merged in the felony; *Jane v. State*, 3 Mo., 61—several times reaffirmed; *Mears v. Commonwealth*, 2 Grant [Pa.], 385; *Cain v. State*, 18 Tex., 387—in which the rule is strenuously held; but squarely overruled (without any allusion to the original case) in *Posey v. State*, 32 Tex., 476; *Randall v. Commonwealth*, 24 Gratt. [Va.], 644.

*Contra: People v. Parsons*, 6 Cal., 487—reaffirmed with a protest by Murray, C. J., in *People v. Olivera*, 7 Cal., 403, 404; *Tilly v. State*, 21 Fla., 242—adverb "burglariously" held unnecessary in charging burglary; *Miller v. People*, 2 Scam. [Ill.], 233, substantially reaffirmed in *Quigley v. People*, 2 Scam., 301 [These last two cases are under a statute abrogating the common-law rule]; *Durand v. People*, 47 Mich., 332; *State v. Felch*, 58 N. H., 1. In Tennessee the indictment without a *felonice* is good by statute.—W. F. B.