State, ex rel. Davis, v. Cox.

---

STATE, EX REL. CLARENCE A. DAVIS, RELATOR, V. ESKER M. COX ET AL., RESPONDENTS.

FILED JULY 21, 1920. No. 21611.

1. Schools and School Districts: CONSOLIDATED SCHOOL ACT: CONSTITUTIONALITY. The act covering consolidated schools (Laws 1919, ch. 243) *held* constitutional, as not defective in title, and not shown invalidated through failure of proper procedure in enacting.

2. Statutes: CONSTITUTIONALITY. The Constitution does not require that every step in the course of enacting bills be recorded in the journal, and the enrolled bill, duly authenticated and approved, is *prima facie* evidence of a compliance with those constitutional requirements in its passage, which are not expressly required by the Constitution to be shown on the journal.

3. ———: ———: PRESUMPTION. The silence of the journal on matters, not expressly required to be entered on the journal record, does not conflict with the presumption of the regularity of the passage of the bill afforded by the enrolled bill; but, in order to destroy the presumption of regularity afforded by it, the journal must clearly, explicit and unequivocally disclose the irregularity in passage.

4. ———: ———: SUBSTITUTION OF NEW BILL BY AMENDMENT. The method of substituting an entire new bill by amendment, when the changes by way of amendment are strictly germane to the original, is not unconstitutional, is in accord with universal legis-

lative procedure, and it is unnecessary that a bill, which has been read the first and second time before such amendment, shall be again placed on first and second reading before passage.

5. ——: ——: Printing. The record does not disclose that the bill, with amendments, was not printed before final passage, and the act is not unconstitutional on that objection.

6. ——: ——: Amendment. The enactment is not in violation of section 11, art. III of the Constitution, providing that no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended be repealed.

7. ——: Consolidated School Act: Validity. The provision of the bill, providing an appropriation, is invalid, since the bill did not originate in the house, but this provision is not so essential to the entire act that it can be presumed that the legislature would not have passed the act without it, and, therefore, does not invalidate the act as a whole.

Original proceeding in *quo warranto* to determine the right of respondents to hold office as members of a board of education. *Action dismissed.*

*Stewart, Perry & Stewart, Lambe & Butler* and *Clarence A. Davis, Attorney General,* for relator.

*O. E. Shelburn, Peterson & Devoe* and *George W. Ayres, contra.*

Flansburg, J.

Action in *quo warranto,* commenced in this court, to try the right of the members of the board of education of Consolidated School District No. 2 of Harlan county to hold office. The school district referred to and offices now held by respondents were created under and by virtue of chapter 243, Laws 1919. Relator contends that this act is unconstitutional.

The first objection made is that the bill was amended in one house of the legislature, that these amendments were not concurred in by the other house, and that, therefore, the two branches of the legislature did not pass the bill in the same and final form.

The legislative journals show that the bill was introduced in the senate as Senate File No. 261. After being passed by that body and transmitted to the house, it was referred to the committee on education, and on April 10, 1919, reported out of that committee, with recommendation that the bill be amended in two specific particulars. The report was adopted. On April 12 the sifting committee recommended that the bill be placed on the sifting file with "no amendments." The committee of the whole reported the bill, with recommendation that the "house amendments" be engrossed, and that the bill be placed on the calendar for third reading. No report of the committee on engrossed and enrolled bills is shown, nor is there any further record of any action taken on this bill until on April 14, when it appears that the bill was read the third time and put upon its passage. At that time the speaker, in the usual form, declared: "This bill having been read at large on three different days, and the same with all of its amendments having been printed, the question is, shall the bill pass?" The record further shows the vote taken and, "a constitutional majority having voted in the affirmative, the speaker declared the bill was passed and the title agreed to." The house then reported to the senate that it had passed Senate File No. 261. In this report there was no mention that any amendments had been made. The bill was enrolled without any house amendments, and the presiding officers of each house and the governor signed the bill in that form.

The bill was not duly enacted unless it was voted upon and passed by both houses in its final form. *Moore v. Neece*, 80 Neb. 600.; *Cleland v. Anderson*, 66 Neb. 252, 262.

Does it affirmatively and unequivocally appear from the record that the bill was not so passed?

In the majority of jurisdictions a bill is conclusively presumed to have been regularly enacted when the en-

rolled bill, properly authenticated and approved, is filed with the secretary of state, and the courts in those states have no power to look to the legislative records to see whether the constitutional requirements have been complied with. 36 Cyc. 973. We have a more liberal rule in this state. An enrolled bill is only *prima facie* evidence of a compliance with the constitutional requirements in its passage, and this presumption is rebuttable. If the legislative journals clearly and explicitly contradict the evidence furnished by the enrolled bill, the journals will control. *Webster v. City of Hastings,* 59 Neb. 563; *State v. Burlington & M. R. R. Co.,* 60 Neb. 741; *State v. Abbott,* 59 Neb. 106; *State v. Frank,* 61 Neb. 679; *Stratton v. State,* 79 Neb. 118.

The Constitution does not expressly require that all steps in the passage of a bill shall be spread upon the journals, and, though the legislature is required to keep journals of its proceedings, an omission to show a step in the procedure in the course of enactment raises no presumption that such step was not taken, except as to those acts which the Constitution explicitly requires shall be shown upon the journal, such, for instance, as yeas and nays on final passage. *People v. Illinois State Board of Dental Examiners,* 278 Ill. 144; *Perry v. State,* 214 S. W. (Ark.) 2. Where the journal is silent, therefore, as to such steps not expressly required to be shown, the enrollment, authentication and approval of the bill will suffice to supply the proof that the step was taken. As said in *State v. Frank,* 60 Neb. 327, 333: "The enrolled bill has its own credentials; it bears about it legal evidence that it is valid law; and this evidence is so cogent and convincing that it cannot be overthrown by the production of a legislative journal that does not speak, but is silent. Such seems to be the conclusion reached by a majority of the courts; and such, certainly, is the trend of modern authority. To hold otherwise would be to permit a mute witness to prevail over evidence

which is not only positive, but of so satisfactory a character that all English and most American courts regard it as ultimate and indisputable.''

Upon examining the history of the statute in controversy, we find that the journal does not explicitly show that the house, on final passage, voted amendments to the bill. It is true that the report of the committee on education proposing amendments was adopted, and that the committee of the whole ordered the ''house amendments'' engrossed. The proceedings in committee of the whole are not set forth; neither is it shown what the ''house amendments'' were when the bill emerged from that committee. The journal does not show any report of the committee on engrossed and enrolled bills after this bill had been referred to it, nor does the record set out the bill or what it contained when it was finally voted upon. When reported to the senate, the record does not show that the bill was transmitted *with amendments*. So far as the record goes, the house may have receded from the proposed amendments before final passage, and passed the bill in its original form—the form in which it was signed and authenticated by the presiding officers of the two houses. There is some indication, at least, that this was done, from the fact that, in transmitting the bill to the senate, no amendments were noted. No significance can be attached to the words of the speaker, at the time of third reading, to the effect that, ''this bill having been read at large on three different days, and the same with all of its amendments having been printed, the question is, shall the bill pass?'' for that stereotyped phrase, as the journal shows, is used for all bills put on final passage, whether they carry amendments or not.

The journal record is not clear and complete. It does not affirmatively show that the bill was ever engrossed with amendments, nor that the house did not recede from proposed amendments prior to the final passage. On the other hand, there is evidence tending to the inference

that the amendments were, in fact, withdrawn. There being no clear and unequivocal proof that the house adopted amendments which are not shown in the enrolled bill, the journal record is insufficient to impeach the evidence arising from the enrollment of the bill and the authentication by the presiding officers of the two houses that the bill was duly passed.

Such is the holding in the case of *Perry v. State, supra,* in a case almost identical with this, and similar rulings are found in *State v. Dean,* 84 Neb. 344, and *In re Appraisement of Omaha Gas Plant,* 102 Neb. 782. In the case of *Perry v. State, supra,* the senate amended the bill and ordered it engrossed for third reading. These amendments were not found in the bill as signed by the governor. That case differs, and goes a step farther than this, in the fact that the committee on engrossed and enrolled bills reported the bill back as "correctly engrossed" before it went to third reading. The court said (214 S. W. 2, 4):

"After being engrossed, it was within the province and power of the senate to have ordered the bill placed back on its second reading for amendment, and to have receded fom the amendment engrossed into the bill, or to have stricken the amendment from the bill, and, should such course have been taken, it would not have been necessary to its validity to have entered these steps, concerning the amendment, on the journal.

"The silence of the record in this regard would not conflict with the presumption that such course was pursued by the senate. The silence of a legislative journal, on matters not required to be entered on the journal, cannot conflict with the presumption of the regularity of the passage of a bill. It is only in matters where the journal does speak, or where it is required to speak, that it could conflict with such presumption."

The next contention made is that the bill as passed was not read in the senate on three separate days. The jour-

nal shows that the bill was introduced by the governor on April 4 and read the first time under the title: "A bill to provide for the districting of consolidated schools and to repeal section 2, chapter 121, Session Laws of 1915, relating to consolidated school districts, and to repeal chapter 229, Session Laws of 1917, relating to the districting of school districts, and to declare an emergency." The bill was read the second time on April 7, and on that day the committee on education recommended amendments in the nature of a substitute bill, and these amendments were again recommended by the committee of the whole on April 8. By these amendments the title was changed to read as follows: "A bill for an act to provide for the districting of all territory into districts for consolidated and high school purposes, and to provide for the organizing and operating of the same, and to repeal chapter 229, Session Laws of 1917, and section 2 of chapter 121 of the Session Laws of 1915." All after the enacting clause was amended by a substitute bill. The body of the bill, as originally introduced, is not disclosed. The subject expressed in the original title was to provide for districting consolidated schools. By the amendment to the title, provision was added for "organizing and operating of the same." Redistricting could not take place without a provision for organizing and operating the same, under the districts as newly created.

We see no material nor substantial change in the title which is not strictly germane and proper. No doubt the body of the act was amended in a manner entirely germane to the act originally introduced. There is no record to the contrary, and nothing to rebut the presumption that the amendment, in the nature of a substitute bill, was properly made. Our court has held that a substitute bill which is germane to the original is not a new bill. *Chittenden v. Kibler,* 100 Neb. 756. See also *Thrift v. Towers,* 127 Md. 54. And it is the rule that it is unnecessary, as each amendment is made, to begin again and read the

bill three times as amended. *State v. Ryan*, 92 Neb. 636; *Cleland v. Anderson, supra; Richards v. State*, 65 Neb. 808.

It is objected that the bill and amendments were not printed before final passage. The record does not affirmatively disclose such to be the fact. On the contrary, it is recorded that on final passage the bill with amendments had been printed. There appears to be no basis for that contention.

It is argued that the bill did not contain the section or sections sought to be amended, nor repeal the sections of the statute so amended. The bill does not purport to be an amendment of the former sections, but enacts entirely new legislation upon the same subject matter, and repeals the former sections covering that matter. Such enactments are not in violation of the constitutional requirement that no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed.

It is objected that the title to the bill contains more than one subject, and does not clearly express the purpose of the act. It is clear that the law had one general subject—the redistricting for schools. This necessarily contemplated all necessary provisions incidental to the creation, organization and operation of such consolidated districts. *State v. Amsberry*, 104 Neb. 279; *Cathers v. Hennings*, 76 Neb. 295; *State v. Power*, 63 Neb. 496; *Stewart v. Barton*, 91 Neb. 96; *State v. Ure*, 91 Neb. 31; *Robinson v. Kerrigan*, 151 Cal. 40; *Gay v. District Court*, 41 Nev. 330, 3 A. L. R. 224; *People v. Crissman*, 41 Colo. 450; *Adams v. Iten Biscuit Co.*, 162 Pac. (Okla.) 938; 36 Cyc. 1017.

Again, it is argued that the bill is one appropriating money, and, under the provisions of the Constitution, should have originated in the house. The act provides that all consolidated districts, organized under the law, shall be awarded and paid out of the state treasury, from

moneys not otherwise appropriated, a certain sum of money toward the furnishing of equipment, together with a certain sum annually. This provision of the statute is not directly involved in this case, except in so far as it may give character to the act as a whole as an appropriation bill, in the light of the requirement of the Constitution that all appropriation bills must originate in the house. The creation of the obligation to pay by the state would not, in itself, be an appropriation, but this act goes further, and provides that payments shall be made from certain moneys in the state treasury not otherwise appropriated. This directly creates a charge upon those funds, and to that extent is an appropriation. As an appropriation bill it could not be sustained, since it did not originate in the house. But it is not essentially an appropriation bill. The appropriation made was only an incident to it. That provision of the act cannot be said to be an essential part of the act, for the act would be complete without it, and, though such provision, by providing the method of payment of state aid, created an appropriation, it is not so connected with the subject-matter of the entire act that we can presume that the legislature would not have passed the remainder of the act except for this provision. The one invalid provision, therefore, would not invalidate the entire act. *Merrill v. State*, 65 Neb. 509.

The respondents hold their office under a valid enactment. The action is therefore dismissed, and costs taxed to relator.

DISMISSED.

Rose, J., dissenting.

Morrissey, C. J., and Aldrich, J., not sitting.