STATE, EX REL. CITY OF OMAHA, APPELLEE, V. BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY ET AL., APPELLANTS.

FILED JULY 19, 1922.  No. 22521.

1. Counties. A county does not possess the double governmental and private character that cities do. It is governmental in character only, and in that capacity acts purely as an agent of the state.

2. ── ──── ──: USE OF PROPERTY. Property of the county, acquired by funds raised through taxation, is property of which the state can direct the use, management and disposition, so long at least as this is done for the benefit of the public in the taxing district.

3. Courts: MUNICIPAL COURTS. The municipal courts of the city of Omaha are a branch of the judicial system of the state. They are instrumental in law enforcement throughout the county; tend to lighten the burden of the county and district courts in civil cases; their function is governmental, and they render a public service of general benefit throughout the county, though their jurisdiction is limited to the boundaries of the city.

4. Counties: USE OF PROPERTY. Though the legislature cannot order that money or property be furnished by one taxing district for the sole use and benefit of another district, a requirement that the county commissioners furnish offices in the county courthouse for the municipal courts does not appropriate the property of one district for the use of another, but is simply an apportionment of the use of the property for the interests and general public benefit of taxpayers in that particular taxing district; the city, as well as the remainder of the county, having contributed to the funds for the erection of the building.

5. Constitutional Law: COUNTIES: USE OF PROPERTY. The statute (Laws 1921, ch. 120), providing for the housing of municipal courts in the county courthouse, does not interfere with vested rights of the county in such property, and is not unconstitutional as a deprivation of the use of property without due process of law; nor does it deny the equal protection of the law.

State, ex rel. City of Omaha, v. Board of County Commissioners.

6. **Courts: Statutes: Construction.** Chapter 144, Laws 1921, regarding duties of county commissioners and providing that they should furnish suitable rooms for the accommodation of the "several courts of record," and chapter 120, Laws 1921, relating to municipal courts and providing that county commissioners should house municipal courts in the courthouse and charge a rental therefor, construed, and *held* not to be inconsistent with each other,

7. ———: **Municipal Courts.** The term "courts of record," as used in chapter 144, Laws 1921, as is shown by the history of the act, *held* not to have been intended to cover municipal courts.

8. **Statutes: Inconsistency: Time of Enactment.** Where two statutes are enacted at the same session of the legislature without reference to one another, but as amendments of the identical section of a preexisting statute, if the provisions of the two enactments are irreconcilable with one another, the one which is the later expression of the legislative will must prevail.

9. ———: **Amendment.** Where the legislature amends a statute, its error in ignoring an amendment of the act referred to will not invalidate the enactment, where the intention of the legislature is clear as to what preexisting law was intended to be amended.

10. ———: **Title.** *Held*, that the provision in chapter 120, Laws 1921, providing for the housing of municipal courts, is not beyond the scope of the title of the original act, chapter 182, Laws 1915, of which chapter 120, Laws 1921, is an amendment.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*A. V. Shotwell* and *W. W. Slabaugh*, for appellants.

*Dana B. VanDusen* and *John F. Moriarty, contra.*

Heard before MORRISSEY, C. J., DEAN, ALDRICH, DAY and FLANSBURG, JJ.

FLANSBURG, J.

This is an action in mandamus, brought on the relation of the city of Omaha, to command the county commissioners of Douglas county to furnish office rooms for the use of the municipal courts of the city of Omaha in the county courthouse. The action is based upon certain acts of the legislature of 1921, which provide that the county commis-

sioners of any county shall furnish rooms in the courthouse for the municipal courts of any city which is the county seat of that particular county. The district court allowed the writ of mandamus to issue, and from this order the respondents, county commissioners, appeal.

There are two acts of the legislature, passed at the session of 1921, pertaining to the duty of the county commissioners as to the furnishing of rooms in the courthouse for courts in the county. A controversy has arisen as to which law governs, since one provides for the payment of rental by the city and the other does not.

The history of one act is as follows: In 1879 the legislature, defining the duties of the county commissioners with respect to the housing of courts, declared that the commissioners should erect or otherwise provide county buildings and should furnish suitable rooms and offices for the accommodation of the "several courts of record." Laws 1879, p. 361, sec. 25. The courts of record referred to by this act were the county courts and district courts, there being then no other courts of record in the county. This provision, respecting the housing of courts, was carried throughout the statutes until in 1919, when, by chapter 66, Laws 1919, approved April 8, 1919, the same provision of that statute was reenacted.

Subsequent to the approval of that act, but at the same session of the legislature, the original law was again, by an entirely different and independent bill, amended, and without any reference whatsoever to chapter 66, just mentioned. The later statute was approved April 15, and appears as chapter 67, Laws 1919. It provided that the county commissioners should furnish suitable rooms for the accommodation of the several courts of record, and added the following provision: "Including suitable rooms and clerks' offices for the accommodation of any municipal court of record whenever the city having such court is the county seat of the county." Under our decisions, chapter 67, being the later enactment amending an identical section of the previous statutes, would be held to have re-

pealed, by implication, chapter 66. *Futscher v. City of Rulo*, 107 Neb. 521; *Morgan v. City of Falls City*, 103 Neb. 795.

In 1921 the legislature again passed a law having to do with the identical section of the statute treated by these two laws of 1919. This statute (Laws 1921, ch. 144), however, purported to amend chapter 66, Laws 1919, instead of chapter 67, Laws 1919, ignoring that amendatory act, and again reenacted the provision which was originally found in the statute of 1879, providing that the county commissioners should furnish suitable rooms for the accommodation of the "several courts of record." It omitted entirely the provision of chapter 67, Laws 1919, expressly providing for the furnishing of rooms for *municipal courts.*

Though the 1921 act purports to amend chapter 66, Laws 1919, and ignores the amendatory act, chapter 67, Laws 1919, such mistaken reference to the former statute, without express mention of the subsequent amendatory act, does not invalidate the act, for there is sufficient identification of the previous existing law sought to be amended to make certain the legislative intention. *State v. Babcock*, 23 Neb. 128; *Fenton v. Yule*, 27 Neb. 758; *Richards v. State*, 65 Neb. 808; notes, 5 A. L. R. 996, 1009.

The history of this 1921 enactment, then, shows that the original law of 1879 provided for the housing of the "courts of record" of the county; that in 1919 the legislature added a provision for the housing of "municipal courts," and, by a still later enactment, 1921, struck out the provision for the housing of the municipal courts. The legislature of 1879, in referring to "courts of record,"had in mind those courts of record which were then known to the law, and those did not include municipal courts. The legislature evidently deemed it necessary in 1919, in order that municipal courts be brought within the law, that they be specifically mentioned. The legislature, when it again reenacted the law in 1921, striking out the specific mention, would seem to have intended to again eliminate from

the law any provision with regard to housing the municipal courts.

This interpretation is further strengthened and confirmed when we consider the other enactment of the 1921 legislature, which it is claimed governs in this case. It is independent of the act which we have been discussing, and appears as chapter 120, Laws 1921. This act is more specific, in its mention that municipal courts shall be housed in the court house, than chapter 144, Laws 1921, and was approved and became a law at the same session and seven days later. The provisions of chapter 120 are as follows: Where a city having a municipal court is the county seat of the county, "it shall be the duty of the county board to provide suitable rooms and clerk's office for the accommodation of such court in the county courthouse, and in such case the city shall pay to the county a reasonable yearly rental for such rooms." This, being the clearer and more pronounced enunciation, as well as being the later expression of the legislative will, would govern as against the general provision found in chapter 144, which simply provided that county commissioners shall furnish rooms for the accommodation of the "several courts of record," even were we to believe that the legislature intended to include municipal courts within the term "courts of record." 36 Cyc. 1130; *Omaha Real Estate & Trust Co. v. Kragscow*, 47 Neb. 592.

But we believe the two acts can be harmonized by the interpretation which we have placed upon chapter 144, that the legislature, in speaking of courts of record, intended to refer to those courts of record in the county, other than municipal courts, the municipal courts having been only recently created by the law, and that chapter 120 was intended particularly to cover the matter of housing municipal courts. It is therefore our opinion that chapter 120, Laws 1921, is the statute applicable here.

In further defense the respondents contend that the statute (Laws 1921, ch. 120) is in violation of section 14, art. III of the Constitution. It is claimed that the pro-

vision, providing for the housing of municipal courts in the county courthouse, is not germane to the original act, of which the 1921 statute is an amendment, and that such provision is not within the scope of the title of that act. The title of the original act (Laws 1915, ch. 182), of which act the 1921 statute is an amendment, is as follows: "An act to create a municipal court in cities of certain classes, to fix and define the organization, powers, and jurisdiction of the same, and to repeal all acts and parts of acts in conflict herewith." The constitutional limitation, that no bill shall contain more than one subject, which shall be clearly expressed in the title, does not require an enumeration in the title of all the different matters which may properly be covered in the body of the act, all having to do with one general subject. The title of the act is not intended to serve as an index. It is manifest that, if a municipal court is to be organized and to operate, those things which are incidental to the carrying into effect of those ultimate objects may properly be provided in the law. The index indicates the general object sought to be attained, and the housing of the court is a provision plainly incidental to that general object. *State v. Cox,* 105 Neb. 75, and cases therein cited.

It is further contended that the statute takes the property of Douglas county and appropriates it to the use of the city of Omaha without due process of law, and that the statute denies the citizens of Douglas county the equal protection of the law, and for these reasons is violative both of the state and federal Constitutions.

It must be remembered that a county does not possess the double governmental and private character that cities do. It is governmental only, and in that capacity acts purely as an agent of the state. The funds raised by taxation in the county are subject to the direction and control of the legislature for public use in that county, and the property of the county, acquired by funds raised through taxation, is property of which the state can direct the management and disposition, so long at least as

it acts for the benefit of the public in the taxing district. *City of Edwardsville v. Madison County,* 251 Ill. 265; *Reclamation District v. Superior Court,* 171 Cal. 672; *Board of Commissioners v. Lucas,* 93 U. S. 108; *State v. County Court of St. Louis County,* 34 Mo. 546; *Dunne v. Rock Island County,* 283 Ill. 628; *Harris v. Board of Supervisors,* 105 Ill. 445; *Heffner v. Cass and Morgan Counties,* 193 Ill. 439; *Erskine v. Steele County,* 87 Fed. 630; 15 C. J. 536, sec. 220.

The court in *Erskine v. Steele County, supra,* in summarizing, say: A county, "being a mere instrumentality of the state for the convenient administration of government, is at all times, both as to its powers and its rights, subject to legislative control. While it is no doubt true that the legislature has not such transcendent and absolute power over these bodies that it can apply property held by them to private purposes or to public purposes wholly disconnected with the community embraced within their limits, still it is likewise true that a purely public corporation, like a county, cannot acquire any vested interest which will preclude the legislature from directing the application of all its property and rights to the performance of those governmental functions which pertain to the community embraced within the corporation, and for the performance of which the corporation was created. If it were otherwise, counties, instead of being agencies of the state for administering the government, would be petty sovereignties, to impede and defeat the state with claims of local interest and authority."

The revenues of the county do not become the property of the county in the sense of private ownership, and the legislature has authority to prescribe the division and apportionment of money, raised by county taxation, between the county and a city within its limits. 37 Cyc. 1589. It is true that the legislature could not divert funds raised by one district to the use of another district (*Board of Commissioners v. Lucas, supra*), since a tax levied for a public purpose must also be levied for the use of the

42            NEBRASKA REPORTS.            [Vol. 109

State, ex rel. City of Omaha, v. Board of County Commissioners.

district which is taxed. Should the legislature order
that money be raised by one district and paid to another
district, to be used for the sole benefit of that other dis-
trict, that would be an exaction of money for the benefit
of others than those who are taxed and clearly beyond
what could be justified as taxation. 26 R. C. L. 72, sec. 51.

The municipal courts of the city of Omaha are a branch
of the judicial system of the state. *People v. Cobb,* 133
Cal. 74; *Barton County v. Walser,* 47 Mo. 189; *State v.
Wofford,* 121 Mo. 61.   Their function is governmental,
and the service they render is a public service. It cannot
be said that they serve alone the citizens of Omaha.
Though their jurisdiction of the person is limited to the
boundaries of Omaha, many persons throughout the
county have opportunity to use these courts.   They are
courts which are instrumental in the enforcement of the
criminal laws throughout the county, and have jurisdic-
tion in amounts, in civil cases, up to $1,000. No doubt
the legislature considered that the service rendered by
the municipal courts, in civil cases lightened the work of
the district and county courts; also that it would be of
benefit to have the several courts accessible in one building.

The legislature, we believe, had the power, in the first
instance, had it desired to exercise it, to require the
county to raise funds and contribute to the support and
maintenance and housing of municipal courts, for these
courts render a service and are of benefit to the entire
county, being a branch of the general judicial system and
a part of the law-enforcing machinery of the state. *State
v. County Court of St. Louis County, supra; Young v.
Kansas City,* 152 Mo. 661; *State v. City of Lawrence,* 79
Kan. 234; *Clark v. Eve,* 134 Ga. 788; *Ashwell v. Bullock,*
122 Mich. 620.

The legislature would also have had the right to de-
scribe, as a condition to the right of the county to levy a
tax, how and in what manner the courthouse should be
used for the benefit of the citizens in the county.   Surely,
if that is true, the legislature still has the power and the

authority to direct and control the use and management of this property, to the end of gaining what, in its judgment, will best serve the public needs and be of most general benefit to the public in the district.

We see no reason why it cannot now direct, as it has done by the statute in question, that the municipal courts shall be housed in that building. This is not a diversion of funds or property of the county to the use of persons who have not contributed by taxation to those funds. A large part of the contributions from which the courthouse was built was furnished by the city of Omaha. It is simply an apportionment of the use for general benefits and a direction as to how the property, procured by those funds, shall be used to the interest and benefit of the taxpayers in that particular taxing district.

The state has invested the legislature with complete sovereign power, except so far as restricted by constitutional limitations. The question of the extent of legislative power is determined alone by these limitations. We do not see that the enactment in question is in violation of any of the constitutional provisions invoked.

The amount of the rental is not fixed; that must be either agreed upon by the parties or fixed by the county commissioners, subject to the review of the courts.

For the reasons given, the judgment of the lower court is

AFFIRMED.