PETER MEHRENS, APPELLEE, V. SAMUEL GREENLEAF, COUNTY ASSESSOR OF DOUGLAS COUNTY, ET AL., APPELLANTS.

FILED NOVEMBER 2, 1929. No. 27124.

*C. A. Sorensen, Attorney General,* and *George W. Ayres,* for appellants.

*Ziegler & Dunn, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

THOMPSON, J.

The plaintiff, appellee herein, a resident taxpayer of Douglas county, sought to enjoin the defendants, appellants, from enforcing the provisions of chapter 168, Laws 1929, which provide for the classification and taxation of

intangible property and the distribution of the funds raised by such taxation. The trial court found that the above act contravened section 14, art. III, and section 7, art. VIII of our Constitution, and judgment was rendered in favor of plaintiff, to reverse which defendants appeal.

The first of the above findings, after quoting the title of the 1929 act, is as follows: "That section 5884, Compiled Statutes for 1922, to which House Roll 421 (chapter 168, Laws 1929), by its title, professes to be an amendment, was repealed by chapter 169, Laws 1927. That House Roll 421 does not purport to be an independent act, but its purpose, as expressed in the title to said act, is amendatory. That said House Roll 421 actually undertakes to amend chapter 169, Laws of 1927, and not being an independent act and not referring to chapter 169, Laws of 1927, except as an amendment to section 5884 of the Compiled Statutes of Nebraska for 1922, and not undertaking to repeal said chapter 169, Laws of 1927, by purporting to repeal said section 5884, of the Laws of 1922, it violates section 14, article III of the Constitution."

Section 14, art. III of our Constitution, so far as material here, reads as follows: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title. And no law shall be amended unless the new act contain the section or sections as amended, and the section or sections so amended shall be repealed."

The original section 5884, Comp. St. 1922, was a part of a comprehensive act carried into such statutes as chapter 61 thereof, entitled "Revenue." This section 5884 was amended and the original section repealed by chapter 165, Laws 1925, and, as is customary, the section as amended carried the original number "5884," subdivided into parts "(a)" and "(b)." This 1925 act also repealed section 5887 of such Compiled Statutes of 1922.

By chapter 169, Laws 1927, we find the 1925 law repealed, and a new act, complete in itself, passed, with the following title: "An act to provide for the classification and taxation of intangible property; to provide for the

distribution of funds raised by such taxation; to repeal section 5884, Compiled Statutes of Nebraska for 1922, as amended by chapter 165, Session Laws of Nebraska for 1925, relating to the taxation of intangible property; and to declare an emergency." The repealing clause of such 1927 act provides: "That said original section 5884, Compiled Statutes of Nebraska for 1922, as amended by chapter 165, Session Laws of Nebraska for 1925, and all acts and parts of acts in conflict herewith, are hereby repealed." Section 5884, as used in the above quoted title and repealing clause, did not mean, nor could it by any reasonable hypothesis have been intended to mean, the original section 5884 of the Compiled Statutes of 1922, but plainly meant, and was intended to mean, section 5884 as it stood after being amended by the act of 1925.

The act of 1927 was in full force and effect, complete in itself, and a proper subject of repeal, at the time the 1929 act was introduced and being considered. In *Kelkenny Realty Co. v. Douglas County,* 116 Neb. 796, 800, we said: "This act (that of 1927) was not amendatory; it is complete in itself, and repealed all prior acts on the same subject." This statement is but a logical deduction from the title of the act itself, and is approved.

True, the title of the 1929 act provides: "An act to amend section 5884, Compiled Statutes of Nebraska for 1922, as amended by chapter 165, Laws of Nebraska for 1925, as amended by chapter 169, Laws of Nebraska for 1927, relating to revenue and taxation; to provide for the classification and taxation of intangible property, and for the distribution of the funds raised by such taxation; to provide penalties for the violation thereof; to repeal said original sections; and to declare an emergency." And the repealing clause of such act states: "That section 5884, Compiled Statutes of Nebraska for 1922, as amended by chapter 165, Laws of Nebraska for 1925, as amended by chapter 169, Laws of Nebraska for 1927, are hereby repealed." However, it certainly could not be said that the act of 1929 attempted to amend or repeal a section that

had been repealed by the act of 1925 (not by the act of 1927 as stated by the trial court), or to do other than to supplant, in an amendatory way, sections 1 and 2 of the act of 1927, which superseded section 5884 subdivided into parts "(a)" and "(b)" of the act of 1925.

Thus, we conclude that, considering the act of 1929, as outlined in its title, the intention of the legislature obviously was to amend the body of the act of 1927, as evidenced by sections 1 and 2 thereof, and to supplant the provisions of the act in question, and to repeal such original sections 1 and 2 of the 1927 act. Further, considering the act of 1929 in its entirety, it cannot reasonably be said that it contained more than one subject; nor that its title failed to clearly express such subject; nor that such title or act amended or repealed, or attempted to amend or repeal, the original section 5884 as it stood in the Compiled Statutes of 1922, or as it stood in the act of 1925; nor that it was not sufficiently indicative of that which was sought to be amended as well as that sought to be repealed; nor that any one was misled or in any manner deceived by the use of the words "as amended by chapter 169, Laws of Nebraska for 1927," in the title of the 1929 act, as well as in the repealing clause thereof, instead of the words "as changed and repealed by chapter 169, Laws of Nebraska for 1927;" nor that the act was in any manner inducive of surreptitious legislation. Hence, neither the title nor the body of the act in question contravene that part of section 14, art. III of our Constitution, hereinbefore quoted, either as found by the trial court or otherwise.

In thus concluding, we have but followed rules of general application, and especially the uniform holdings of this court. In *State v. Board of County Commissioners*, 109 Neb. 35, 38, we went so far as to state: "Though the 1921 act purports to amend chapter 66, Laws 1919, and ignores the amendatory act, chapter 67, Laws 1919, such mistaken reference to the former statute, without express mention of the subsequent amendatory act, does not invalidate the act, for there is sufficient identification of the previous

existing law sought to be amended to make certain the legislative intention. *State v. Babcock*, 23 Neb. 128; *Fenton v. Yule*, 27 Neb. 758; *Richards v. State*, 65 Neb. 808; notes, 5 A. L. R. 996, 1009." See, also, *Elliott v. Wille*, 112 Neb. 78; *In re Estate of Austin*, 116 Neb. 137; *State v. Farmers Irrigation District*, 116 Neb. 373; 25 R. C. L. 869, 870.

The second finding of the trial court, so far as material, is as follows: "Upon the filing by the taxpayer of the schedule required under said act, the tax is computed and levied without formal action by any assessment body, and is, therefore, levied by legislative decree.

"The act provides that the tax shall be apportioned to the general fund of the city. There is no 'general fund' to the city of Omaha, and if the phrase 'general fund,' as used in this act, has any special significance so far as metropolitan cities are concerned, the tax so collected should be credited to the 'miscellaneous expense fund' of the city. This fund is to pay expenses of the city, and, as thus used, would be for the payment of expenses incurred in its corporate capacity; otherwise, the tax so collected would become a part of the general fund of the city, and be distributed and apportioned by the city authorities the same as other revenue. In any event, the tax so collected would be used in part, at least, by the city for corporate purposes. To that extent, House Roll 421 (the act of 1929) violates section 7, article VIII of the Constitution."

The material parts of the 1929 act, pertinent here, are, in substance: Section 1 defines intangible property and divides the same into classes A and B, and then provides: "All intangible property as defined in Class A shall be taxed where said intangible property is assessed at two and one-half mills on the dollar of the actual value thereof. * * * Class B shall include all other kinds of intangible property named in this section which is not included in Class A. All intangible property in Class B shall be taxed where said intangible property is assessed at the rate of eight mills on the dollar of the actual value thereof, the

same to be assessed and collected where the owner resides:" That the aforesaid mill levies shall be in lieu of all other taxes upon such intangible property, and shall. be due, delinquent and collectable at the same time as personal taxes, "and the amount collected in the various taxing districts of the state shall be apportioned, one-sixth to the state general fund, one-sixth to the county general fund, one-third to the general fund of the city or village, one-third to the general fund of the school district in which the property is assessed."

That part of section 7, art. VIII of our Constitution, here involved, is: "The legislature shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes."

In *Williams v. Eggleston,* 170 U. S. 304, it was state: "A municipal corporation is, so far as its purely municipal relations are concerned, simply an agency of the state for conducting the affairs of government, and as such it is subject to the control of the legislature."

Considering the first paragraph of the second finding: As we construe the law, the return is made by the owner, or his agent, and filed with the county assessor, who either accepts the listed statement of the property and its asserted value as designated in such return, or on investigation, by and with the consent of the owner, changes it, and in any event transmits the true situation as found by him, as a part of his completed work, to the county board sitting as a board of equalization, for such board's consideration; the value and amount of both the tangible and intangible property being open to correction if the board, under the rules governing its deliberation, should find it necessary. Thus, the legislature does no more than provide the way or manner of such taxation, the per dollar mill levy, and the distribution of the tax when once collected. It is therefore apparent that the tax is "computed and levied" by the formal action of an "assessment body."

As to the second paragraph of such finding: The words "general fund," as used in that part of the 1929 act re-

ferring to cities and villages, mean a fund which is set apart for the purpose of defraying the governmental expenses of the city or village, and not those expenses which are termed "corporate." The legislature, having designated the fund into which these taxes should go, must have had this construction in mind, as it certainly could not be presumed that the legislature was attempting to contravene the provisions of the Constitution heretofore quoted; neither could it be presumed that the city or village authorities would place these taxes in a fund other than that designated by the act, nor that in making appropriations they would provide that this fund be used for a different purpose than that plainly specified in such act. Therefore, it would be immaterial whether the authorities of the city or village actually named the fund "general" or "miscellaneous expense," as either thereof would refer to the same moneys.

In further support of the conclusions hereinbefore reached as to the constitutionality of the act in question, we might add that a legislative act is always presumed to be within constitutional limitations unless the contrary is clearly apparent—a rule consistently followed by this court. However, the people, ever alert, and jealous of their vested rights, in 1920 adopted as an amendment to the Constitution of our state, as an additional safeguard, the following provision: "No legislative act shall be held unconstitutional except by the concurrence of five judges"—five-sevenths of the membership of the court as then and now composed.

The judgment of the trial court is reversed, and the action dismissed.

REVERSED AND DISMISSED.